#23791-a-SLZ

**2006 SD 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

EZRA PAULEY, ELIZABETH
J. PAULEY, GREGORY ALLEN
PAULEY, and AMY HUGHES
PAULEY,                                         Plaintiffs and Appellees,

        v.

MARK J. SIMONSON AND
MIRA M. SIMONSON,                   Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

MICHAEL A. JACKLEY of
Jackley & Flint                          Attorneys for plaintiffs
Sturgis, South Dakota                    and appellees.

JOHN K. NOONEY of
Thomas, Nooney, Braun,
  Solay & Bernard, LLP                   Attorneys for defendants
Rapid City, South Dakota                 and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 23, 2006

OPINION FILED **08/09/06**

#23791

ZINTER, Justice

[¶1.]        Ezra Pauley and Elizabeth J. Pauley (Pauley) leased agricultural property to Mark J. Simonson and Mira M. Simonson (Simonson).  The lease included an option to purchase the property.  When Simonson failed to make a lease payment, Pauley filed an action for forcible entry and detainer.  After the circuit court determined that the disputed payment was required and that the lease was breached and terminated, both parties moved for summary judgment to determine whether the option to purchase survived.  The circuit court concluded that the option to purchase was not severable, and therefore, the option did not survive the termination of the lease.  Simonson appeals.  We affirm.

**Facts and Procedural History**

[¶2.]        Pauley owned agricultural land in Butte County, South Dakota.  After expressing an interest in leasing the land, Simonson prepared a lease agreement and presented it to Pauley.  The parties subsequently negotiated further terms of the agreement.  The final agreement provided that Simonson would lease the land for $36,000 for the first year.  Simonson was to pay Pauley $6,000 upon execution of the lease and make $10,000 payments on July 4, 2002, October 4, 2002, and January 4, 2003.   After the first year, the annual lease was $40,000, and Simonson was required to make quarterly payments of $10,000 on January 4, April 4, July 4, and October 4 of each year.  The lease was set to expire ninety days upon the last to die of Ezra and Elizabeth Pauley, unless it terminated under the terms of the agreement.

[¶3.]    The final agreement also contained an option provision. The provision gave Simonson the option to purchase the property upon the last to die of Ezra and Elizabeth Pauley. The provision further provided that Simonson was to make a $4,000 nonrefundable payment for the option at the time the lease was executed.

[¶4.]    Upon execution of the lease, Simonson paid the first lease payment of $6,000 and, with a separate check, paid the $4,000 option payment. Simonson also made the three remaining $10,000 payments for the first year of the lease. However, Simonson failed to make the $10,000 payment on January 4 for the second year.[1] Pursuant to Section XXIII of the lease, Pauley notified Simonson that he intended to terminate the lease for failing to make the payment.[2] Pauley also filed the forcible entry and detainer action.

---

1.    Simonson made one payment of $10,000 on January 4, 2003. However, the trial court concluded that under Section IV of the lease, Simonson was required to make two payments of $10,000. Section IV provided:
> For the first year of this Lease, the rent shall be Thirty-six Thousand Dollars ($36,000) with the payments to be as follows: Six Thousand Dollars ($6,000) upon the date of execution of this Lease; Ten Thousand Dollars ($10,000) on July 4, 2002; Ten Thousand Dollars ($10,000) on October 4, 2002; and Ten Thousand Dollars ($10,000) on *January 4, 2003*.
> After the first year of this Lease, the annual rental shall be Forty Thousand Dollars ($40,000) per year, paid in Ten Thousand Dollar ($10,000) quarterly installments due and payable on *January 4*, April 4, July 4, and October 4 of each year.
(Emphasis added.)

2.    Section XXIII provides:
> In the event Tenant should be in default of the performance of any terms, covenants or conditions of this Lease, Landlord may, in addition to every remedy now or hereafter available at law or in equity, have the rights and remedies herein set forth and the same shall be deemed cumulative and not exclusive of those available at law or in equity.

(continued . . .)

[¶5.]    Following the forcible entry and detainer proceeding, the circuit court concluded that Simonson failed to make the $10,000 payment on January 4 for the second year of the lease, and the lease was terminated. Thereafter, both sides moved for summary judgment to determine whether the option to purchase was a separate and distinct contract that survived the termination of the lease.

[¶6.]    Following a hearing on these motions, the circuit court concluded that the option to purchase was not severable from the lease, and therefore, the option did not survive the termination of the lease.[3] This is the sole issue on appeal.

## Decision

[¶7.]    "Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Krier v. Dell Rapids Twp., 2006 SD 10, ¶12, 709 NW2d 841, 844-45 (citing SDCL 15-6-56(c)). "Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied." Id. (citation omitted). "We review questions of law de novo with

_____

(. . . continued)

> Upon default Landlord shall have the right to re-enter the premises. Landlord, either before or after re-entry, may notify Tenant, if Tenant can be located, that he elects to terminate this Lease. Upon default Landlord shall have the right to take possession of all crops, both harvested and unharvested, the right to remove all property and persons from the leased premises, and the right to store in public warehouse at Tenant's expense all property so removed.

3.    A third trial was later held regarding damages.

no discretion given to the circuit court." Wagner v. Brownlee, 2006 SD 38, ¶24, 713 NW2d 592, 600 (citing Blenner v. City of Rapid City, 2003 SD 121, ¶41, 670 NW2d 508, 514).

[¶8.]     The interpretation of a contract is a question of law. Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶14, 709 NW2d 350, 354 (citations omitted). This Court looks "to the language that the parties used in the contract to determine their intention." Id. ¶16 (citation omitted). "If that intention is clearly manifested by the language of the [agreement], it is the duty of this [C]ourt to declare and enforce it." Id. (citations omitted). However, if the contract "is uncertain or ambiguous," parol and extrinsic evidence may be used for clarification. Jensen v. Pure Plant Food Intern., Ltd., 274 NW2d 261, 263-64 (SD 1979). "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Ziegler Furniture, 2006 SD 6, ¶16, 709 NW2d at 355 (internal citations and quotations omitted). If the agreement is ambiguous, parol and extrinsic evidence may be utilized "to show what they meant by what they said, but not to show that the parties meant something other than what they said." Jensen, 274 NW2d at 264 (citing Christiansen v. Strand, 81 SD 187, 193, 132 NW2d 386, 389 (1965)).

[¶9.]     The parties agree that there are no genuine issues of material fact in dispute; therefore, this Court need only determine whether the circuit court correctly applied the law in concluding that the option was not severable from the lease. In Commercial Trust & Sav. Bank v. Christensen, 535 NW2d 853 (SD 1995),

-4-

we set forth the requirements for severability. First, two preliminary requirements must be satisfied: "(1) the parties' performances must be separable into corresponding pairs of part performances and (2) the parts of each pair must be regarded as agreed equivalents." *Id.* at 857 (citing E. Allen Farnsworth, *Contracts* §5.8, at 382 (2nd ed 1990); Restatement (Second) of Contracts § 183 (1979)). These preliminary requirements highlight that "a distinguishing mark of a divisible contract is that the consideration is not single, but can be apportioned to correspond with separate consideration offered by the other party." *Id.* (citations omitted). Second, courts may also consider two additional limitations "if part of the agreement offends public policy: (1) the agreement must not be an integrated scheme to contravene public policy and (2) the party seeking enforcement must not have engaged in serious misconduct." *Id.* at 858 n2 (citation omitted). We need only address the two preliminary requirements in this case.

[¶10.]     The circuit court concluded that the $4,000 consideration was not an agreed equivalent for the option. After analyzing a previous draft of the lease, the court concluded that there was "no equivalent value because the parties merely carved out the option payment from the annual lease payment." Thus, the circuit court concluded that the $4,000 payment for the option was merely form over substance because it was, in reality, a part of the first quarterly lease payment. We agree.

[¶11.]     Pauley and Simonson's agreement does not address their intention regarding termination of the option upon default and termination of the lease. Section XXIII, which contains the landlord's remedies upon default, merely provides

-5-

that: "Landlord, either before or after re-entry, may notify Tenant, if Tenant can be located, that he elects to terminate *this Lease*." (Emphasis added.) However, the other terms of the agreement do not reveal whether "this Lease" meant the entire agreement, including the lease and the option, or just the lease. Thus, we turn to extrinsic evidence to clarify this ambiguity.

[¶12.]     The record indicates that Simonson sent Pauley an outline of a proposed lease agreement on February 5, 2002. This proposal, which was drafted by Simonson, provided that the annual lease would be $40,000. However, on March 13, 2002, Simonson sent Pauley a more formal second draft of the lease. This draft reduced the annual payment for the first year by $4,000 and added the provision that gave Simonson the option to purchase the property for $4,000. Simonson also sent Pauley a note with the second draft, which stated:

> One important point: he made the first $10,000 payment split into a $6,000 lease payment plus a $4,000 option-to-purchase payment. He did this to ensure that my option to purchase will stand the test of time; otherwise, the executor of your estate would not be obligated to honor our agreement.

The drafts and this note reflect that although the parties intended to make the option binding on Pauley's estate, the consideration for the option was merely a reallocation of the first quarterly lease payment. Considering the prior drafts as well as Simonson's note, we agree with the circuit court that this did not evince equivalent value for both parts of the agreement, *i.e.*, the consideration for the option was merely a part of the first quarterly lease payment.

[¶13.]     Our decision today is supported by our holding in *Commercial Trust*. In that case, farm land was leased for a ten year period, and the agreement

contained an option to purchase the property. *Commercial Trust*, 535 NW2d at 855. A subsequent addendum to the lease provided an option to extend "the lease for a period of twenty (20) years." *Id.* The lessor's successors subsequently questioned whether the agreement violated the twenty year limitation on the lease of agricultural land in SDCL 43-32-2.[4] *Id.* at 855-56. The lessees argued that even if the agreement violated the statute and was invalid, the option to purchase was enforceable because it could "be severed from the invalid portion of the contract." *Id.* at 857. This Court concluded that the option was not severable from the invalid lease because "when the lease was declared unenforceable, there was no separate consideration to support the continuation of the option [to purchase]." *Id.* at 858. This Court relied on the fact that the addendum merely "increased the purchase price o[f] the land by $1,000," which the lessees "only promised to pay . . . if they chose to *exercise* the option." *Id.* Thus, "[t]he option itself was not supported by any additional consideration." *Id.*

[¶14.]      Similarly, in *Mattson v. Rachetto*, 1999 SD 51, 591 NW2d 814, this Court considered a contract for the sale of land that contained an agricultural leaseback provision. *Id.* ¶4. The contract was rescinded by the trial court on the ground of a mistake of law because neither party was aware that the leaseback was void under SDCL 43-32-2. *Id.* ¶¶5, 14. In determining whether the contract for sale was separate and distinct from the leaseback, this Court analyzed the language

---

4.      SDCL 43-32-2 states, in pertinent part:
        No lease or grant of agricultural land for a longer period than
        twenty years, in which shall be reserved any rent or service of
        any kind, shall be valid.

of the contract[5] and concluded that, like the option in *Christensen*, the leaseback was inseparable because it was not supported by separate consideration. *See id.* ¶¶22-25.

[¶15.] This case is similar to *Commercial Trust* and *Mattson* because there was no separate consideration for the option to purchase the land. Rather, the two drafts and Simonson's note reveal that the parties intended to enter into an agreement to lease the land for $40,000 per year and that the $4,000 option price was merely a part of the first quarterly lease payment. Because there was no separate consideration for the option, there were no agreed equivalents for the parts of each pair of part performances. Therefore, the preliminary requirements set forth in *Commercial Trust* are not satisfied, and the option to purchase cannot be severed from the invalidated lease.

[¶16.] Affirmed.

[¶17.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

5. The agreement provided:
   1) For and in consideration of the sum of Twenty-six Thousand Nine Hundred Fifty-nine Dollars and Fifty Cents ($26,959.50), [Sellers] agree to convey by Warranty Deed to [Purchasers] [Tract C]:
      . . .
   2) For and in consideration of the agreement by [Sellers] to sell the above-described property to [Purchasers], [Purchasers] hereby lease to [Sellers] the above-described property.

   *Mattson*, 1999 SD 51, ¶24, 591 NW2d at 819.