#24146-a-SLZ
**2007 SD 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KIM KLING and CHRIS KLING,         Plaintiffs and Appellants,

     v.

JUDITH K. STERN, individually,
JUDITH K. STERN, trustee for the
Judith K. Stern Amended and
Restated Revocable Trust,         Defendants and Appellees,

     and

JUDITH K. STERN, trustee for the
Judith K. Stern Amended and Restated
Revocable Trust,         Third Party Plaintiff and Appellee,

     v.

ROGER A. KESSINGER and JOANNE
M. KESSINGER,         Third Party Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

KENNETH E. BARKER of
Barker Reynolds Law Firm, LLC         Attorneys for plaintiffs
Belle Fourche, South Dakota         and appellants.

WESLEY W. BUCKMASTER of
Buckmaster Law Offices, PC         Attorneys for defendants
Belle Fourche, South Dakota         and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2007

OPINION FILED **05/30/07**

#24146

ZINTER, Justice

[¶1.]        Kim and Chris Kling (Klings) sought a declaratory judgment that

Judith Stern violated a restrictive covenant prohibiting the subdivision of land into

parcels containing less than forty acres.  The specific question was whether Stern

violated the covenant when she subdivided the covenanted land into parcels of less

than forty acres, but did so by "blending" the covenanted land with non-covenanted

land to create "mixed" parcels that were forty acres or greater.  The circuit court

granted summary judgment in favor of Stern allowing the blended parcel

subdivision.  Klings appeal.  We affirm.

### Facts and Procedural History

[¶2.]        The history of the most relevant covenanted and non-covenanted land

is set out in the following time line format:

> 1985- Klings sold over 2,000 acres of land to Bruce L. Riley.
>
> 1998- Riley sold approximately 1,000 acres of this land to Roger and
> Joanne Kessinger (Kessingers).  The grant was by warranty deed, with
> the covenant prohibiting subdivision of the land into less than forty-
> acre "parcels."
>
> 1999- Klings sold over 30 acres of other land (non-covenanted land
> called Tract E) to Kessingers.
>
> 2003- Kessingers combined land from Tract E (non-covenanted land)
> together with the covenanted land they acquired from Riley to form
> Tract K-4, a 80.57 acre "mixed parcel" – containing approximately 55
> acres of covenanted land and 25 acres of non-covenanted land.
>
> 2003- Stern bought Tract K-4 from Kessingers.
>
> 2005- Stern subdivided K-4 into K-4A (40.29 acres) and K-4B (40.28
> acres).  This transaction divided the original covenanted land such that

neither K-4A nor K-4B contained forty acres of covenanted land. Stern subsequently sold K-4A and K-4B.[1]

[¶3.] Because Tracts K-4A and K-4B were created by blending covenanted and non-covenanted land into parcels that contained less than forty acres of covenanted land, Klings contend that Stern violated the forty-acre restrictive covenant. Stern, however, argues that she could subdivide the covenanted land as long as the mixed parcels each contained at least forty acres.

[¶4.] Both parties agreed there were no material issues of disputed fact and they moved for summary judgment. The circuit court first determined that the covenant was unambiguous and the language reflected the grantor's intent to allow subdivided parcels of mixed land. Alternatively, the circuit court considered related covenants[2] and Riley's testimony concerning intent of the covenant. The circuit court ultimately found that the intent of the covenant was to prevent subdivisions of less than forty acres to create "spacing" in "residential development." Because Stern's subdivision did not violate that intent, the circuit court concluded that the mixed parcels did not violate the covenant.

---

1. In 2001, Kessingers combined land from Tract E (non-covenanted land) together with land purchased from Riley (covenanted land) to also form Tract K-3, a 40-acre "mixed" parcel of covenanted and non-covenanted land. That same year, Klings purchased Tract K-3 from Kessingers. Stern has not appealed the circuit court's ruling that Klings' purchase of Tract K-3 did not waive or estop them from seeking to enforce the forty acre subdivision covenant with respect to Tracts K-4A and K-4B.

2. We understand Klings' argument that restrictions in Tract E, Tract K-3, and covenants and restrictions in the Country Hills Estates development support their interpretation of the Riley-Kessinger covenant. However, these other restrictions and covenants either do not apply to the property in Tracts K-4A

(continued . . .)

**Standard of Review**

[¶5.]     When reviewing a grant of summary judgment, "'[w]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.'"  Burch v. Bricker, 2006 SD 101, ¶5, 724 NW2d 604, 606 (quoting Garrett v. Bank West, Inc., 459 NW2d 833, 836-837 (SD 1990)).  "'Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied.'"  Pauley v. Simonson, 2006 SD 73, ¶7, 720 NW2d 665, 667 (quoting Krier v. Dell Rapids Twp., 2006 SD 10, ¶12, 709 NW2d 841, 844-845).  "On appeal we read a covenant as we would a contract, that is, without any presumption that the trial court was correct.  Whether a contract is ambiguous is a question of law."  Harksen v. Peska, 1998 SD 70, ¶11, 581 NW2d 170, 173 (internal and other citations omitted).  Questions of law are reviewed de novo.  *Pauley*, 2006 SD 73, ¶7, 720 NW2d at 667 (citations omitted).

**Decision**

[¶6.]     The covenant in the Riley-Kessinger deed provided:

> This deed is subject to two (2) restrictive covenants, first, that no mobile homes or manufactured homes shall be allowed on this property other than for grantee's personal use and, secondly, that the above property may not be sold, transferred or alienated *in parcels* of less than forty (40) acres.

---

(. . . continued)
        and K-4B or the other language is not helpful in construing the intent of the Riley-Kessinger covenant.

(Emphasis added.) As previously noted, the ambiguity of this covenant is a question of law to be reviewed de novo. *See supra,* ¶5. Ambiguity exists when something "'is capable of being understood. . .by reasonably well-informed persons in either of two or more senses.'" Petition of Famous Brands, Inc., 347 NW2d 882, 886 (SD 1984) (quoting National Amusement Co. v. Wisconsin Dept of Taxation, 41 Wis2d 261, 267, 163 NW2d 625, 628 (1969) (other citation omitted)).

[¶7.]        In determining a covenant's meaning, it "'should be considered as a whole and all of its parts and provisions will be examined to determine the meaning of any part.'" *Harksen,* 1998 SD 70, ¶20, 581 NW2d at 174 (quoting Piechowski v. Case, 255 NW2d 72, 74 (SD 1977) (citation omitted)). In this case, there is ambiguity created by the covenant's use of the different terms "above property" (describing the covenanted land) and "parcels" (describing the minimum size of allowed subdivisions). The meaning of the term "above property" clearly refers to the land conveyed by the deed. This term meant that all of the conveyed land was subject to the restrictive covenant. However, the term "parcels" is not necessarily the same as "above [described] property." Thus, Riley chose to use different terms for what Klings now claim is the same subject. Considering the use of different terms  in the covenant, it is unclear whether the term "parcels" was intended to require that the subdivided parcels had to contain at least forty acres of the "above [described covenanted] property" or whether the subdivided parcels were simply required to contain at least forty acres.

[¶8.]        Because we believe that it is reasonable to interpret the term "parcels" in either sense, the covenant is ambiguous and it was proper for the circuit court to

consider extrinsic evidence of Riley's intent.[3] "'[I]f [a] contract 'is uncertain or ambiguous,' parol and extrinsic evidence may be used for clarification.'" Hanks v. Corson County Board of County Commissioners, 2007 SD 10, ¶10, 727 NW2d 296, 301 (quoting *Pauley*, 2006 SD 73, ¶8, 720 NW2d at 668 (citing Jensen v. Pure Plant Food Intern., Ltd., 274 NW2d 261, 263-264 (SD 1979))). Considering that the intent of the grantor was to ensure that the subdivided parcels maintained residential spacing of at least forty acres and the subdivision did not violate that intent, we affirm the circuit court's conclusion that the blending of covenanted and non-covenanted land did not violate the covenant.

[¶9.]    Affirmed.

[¶10.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

---

3.    We also note that Klings' interpretation of the covenant would produce an absurd result because it would leave Stern with land that could never be resold. For example, there is little likelihood that topography and other geologic considerations would permit the entire 1000 acres of covenanted property to be subdivided into exactly twenty-five, forty acre parcels. Consequently, under Klings' interpretation, any remaining fragmentary parcels containing less than forty acres could never be sold. "[T]his Court is constrained from interpreting a contract literally if doing so would produce an absurd result. An absurd result is one that is 'ridiculously incongruous or unreasonable;' a result that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed upon." Nelson v. Schellpfeffer, 2003 SD 7, ¶12, 656 NW2d 740, 743 (internal and other citations omitted). Here, it is clear from the language of the covenant that the parties specifically contemplated subdivision of the covenanted land. Yet, Klings' interpretation would not only prohibit a blended subdivision that the parties likely contemplated, but it would further prohibit any sale of residuary fragments, something the parties were very unlikely to have agreed upon.