#24576-a-RWS

**2008 SD 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WILLIAM LILLIBRIDGE,                                 Petitioner and Appellant,

  v.

MEADE SCHOOL DISTRICT #46-1
and BOARD OF EDUCATION,                    Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

ANNE PLOOSTER
General Counsel
South Dakota Education Association
Pierre, South Dakota                              Attorney for petitioner
                                                           and appellant.


BRUCE A. HUBBARD of
Hansen & Hubbard
Sturgis, South Dakota                             Attorneys for respondent
                                                           and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 7, 2008

OPINION FILED **03/05/08**

#24576

SABERS, Justice.

[¶1.] Major William G. Lillibridge (Lillibridge) was hired to be the Marine Corps JROTC[1] (MCJROTC) instructor for the Sturgis Brown High School in Sturgis, South Dakota. When Lillibridge's contract was non-renewed by the Meade School District School Board (School District), he claimed he was entitled to a due process hearing detailed in the negotiated agreement between the School District and the Meade Education Association (MEA). After the School Board denied his request, Lillibridge filed a grievance with the Department of Labor (Department), which ruled in his favor. The circuit court reversed the Department, finding Lillibridge was not a "certificated employee" and therefore, not covered by the negotiated agreement. He appeals and we affirm.

## FACTS

[¶2.] During the summer of 1996, the Meade School District hired Lillibridge to institute and instruct the MCJROTC program for Sturgis Brown High School. Lillibridge is a retired major with the Marine Corps and served for twenty-six years. While Lillibridge has a Masters Degree in Educational Administration, he does not hold a teaching certificate from the South Dakota Department of Education, nor has he ever held such certification. Instead, the Marine Corps provided its certification before it would approve of Lillibridge as an instructor of the MCJROTC program.

---

1. Junior Reserve Officers' Training Corps.

-1-

[¶3.]       Lillibridge was not placed on the same pay scale as the other teachers. Rather, his salary was set by the Marines Corps. The Marines required Lillibridge to receive the same salary as he would if he were an active duty Major. Since Lillibridge was retired, his retirement pay was deducted from this salary. Then, the School District was responsible for one half of the difference between Lillibridge's retirement pay and salary for an active duty Major, while the Marines were responsible for the other one half of the difference. For example, in 1996, an active duty Major's salary was $5,102.13 per month and Lillibridge received $2,254 per month in retirement pay.[2] Of the difference between the two, $2,848.13, the School District was responsible for one half, or $1,424.06 per month. While only responsible for the $1,424.06 per month, the School District paid the entire $5,102.13 and was then reimbursed $3,678.07 for the Marines' monthly share. Lillibridge's raises were on par with the raises of other teachers with Masters Degrees, but his salary was not determined by the teacher salary schedule contained within the negotiated agreement.

[¶4.]       At some point, Lillibridge joined the MEA. All the negotiations of teachers' salaries, benefits and schedules with the School District are to be conducted by the MEA. Despite this agreement, School District claimed Lillibridge negotiated with Dr. Barry W. Furze, superintendent, and Mr. Richard Deaver, principal, regarding his salary. Lillibridge denies negotiating for an increase in

---

2.       Figures come from the Department of Labor hearing Petitioner Exhibit 2.

salary, yet the record reflects Lillibridge discussed and received a $3,100 raise for his work with outside classroom activities.

[¶5.]     In May of 2005, Mr. Heinert[3] informed Lillibridge that his contract would not be renewed for the 2005-2006 school year. The termination notice notified Lillibridge that he "may have access to all of [his] employment records and [he] may, upon written request, appear before the School Board in executive session at its next regular meeting on June 14, 2005 to make a statement concerning the Board's intent to terminate your employment." It also notified that he had the right to be represented.

[¶6.]     Lillibridge obtained counsel through the MEA and rejected the offer to attend the Board meeting. Instead, he filed a grievance with the superintendent. He claimed he was "a regularly employed certificated personnel,"[4] the negotiated agreement applied to him and therefore, he was entitled to a due process hearing

---

3.     When Mr. Furze left the district, Mr. Heinert took his place as superintendent.

4.     The clause provides:

Pursuant to the provision of SDCL ch 3-18, the School Board of School District 46-1, Meade County, South Dakota, hereinafter referred to as the "Board," recognizes Meade Education Association hereinafter referred to as the "Association," as the sole and exclusive representative for all regularly employed certificated personnel, hereinafter referred to as "Employee," except for the Superintendent, Business Manager, Principals, Assistant Principals, Director of Community Education/Curriculum Coordinator, Director of Special Services, Activities Director, and any future position established by the Board where the person filling the position is required by the State of South Dakota, either by law or regulation to have an administrative endorsement.

outlined in Appendix D of the negotiated agreement.[5] The superintendent denied his grievance, so Lillibridge filed a grievance with the Department of Labor.

[¶7.] A hearing was held before an Administrative Law Judge (ALJ). Lillibridge claimed he was "certificated personnel" because he was certified by the Marines to teach the MCJROTC. The School District argued that "certificated personnel" means teachers who hold a teaching certificate from the South Dakota Department of Education. The ALJ found in favor of Lillibridge, set aside the School District's decision to terminate his contract and reinstated his fulltime contract. Moreover, Lillibridge was awarded all back pay and back benefits, plus interest.

[¶8.] The School District appealed to the circuit court, which reversed the ALJ and found in favor of the School District. The circuit court held that Lillibridge could not be "certificated personnel" because he did not hold a teaching certificate. Lillibridge appeals.

## STANDARD OF REVIEW

[¶9.] This case involves the interpretation of a clause within the negotiated agreement between MEA and School District. "The contracts negotiated between public school districts and teachers are like any other collective bargaining agreement, and disputes over the agreement are resolved with reference to general contract law." Wessington Springs Educ. Ass'n v. Wessington Springs Sch. Dist.

---

5.   The pertinent clause of Appendix D provides that "[t]he legal provisions applying to termination and non-renewal of a teacher's contract are contained in SDCL 13-43-6.1 to SDCL 13-43-6.6, inclusive."

#24576

#36-2, 467 NW2d 101, 104 (SD 1991) (additional citation omitted). Contract interpretation is a question of law reviewed de novo. Hanson v. Vermillion Sch. Dist. #13-1, 2007 SD 9, ¶24, 727 NW2d 459, 467 (additional citations omitted).

[¶10.] **Whether the circuit court erred when it determined the School District did not violate, misinterpret or inequitably apply its negotiated agreement when it terminated Lillibridge's contract.**

[¶11.] Lillibridge argues that the circuit court erred when it reversed the ALJ because he had a certificate from the Marines to teach the MCJROTC program. School District claims that the Marines certificate is irrelevant and the only certificate that designates an employee "certificated personnel" is a teaching certificate. Lillibridge claims the School District's interpretation of the contract is erroneous because it attempts to add words to the contract. He claims that the term certificated personnel is undefined and the plain meaning of the utilized language indicates that any certificate qualifies someone as "certificated personnel."

[¶12.] When determining the meaning of a contract, "effect will be given to the plain meaning of its words." *In re* Dissolution of Midnight Star, 2006 SD 98, ¶12, 724 NW2d 334, 337 (additional citation omitted). "We must 'give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation.'" *Id.* (additional citation omitted). We look "to the language that the parties used in the contract to determine their intention." Pauley v. Simonson, 2006 SD 73, ¶8, 720 NW2d 665, 667-68. If the parties' intention is made clear by the language of the contract "it is the duty of this Court to declare and enforce it." *Id.* "However, if the contract 'is uncertain or ambiguous,' parol and

-5-

extrinsic evidence may be used for clarification." *Id.* (quoting Jensen v. Pure Plant Food Intern., Ltd., 274 NW2d 261, 263-64 (SD 1979)).

[¶13.]     The ALJ and the circuit court both declared the language used in the negotiated agreement was clear and unambiguous. Whether a term in a contract is ambiguous is a question of law reviewed de novo. *In re* J.D.M.C., 2007 SD 97, ¶30, 739 NW2d 796 (citing Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 2005 SD 82, ¶18, 700 NW2d 729, 734) (additional citation omitted). "A contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pauley*, 2006 SD 73, ¶8, 720 NW2d at 668. If there is an ambiguity, "parol and extrinsic evidence may be utilized 'to show what [the parties] meant by what they said . . . .'" *Id.*

[¶14.]     Despite the ALJ's and circuit court's determination that the language "certificated personnel" is unambiguous and clear; the term is somewhat ambiguous as to who must perform the certification. While certificated means "to testify to or authorize by certificate"[6] it is unclear whether a person is "certificated personnel" if they are certified by a separate entity to perform their job, such as the food service director, school nurse, attorney, accountant, etc, or if they are "certificated personnel" only if certified by the State Department of Education as a teacher. The words regarding who conducts the certification are capable of more than one meaning when viewed objectively, thus an ambiguity exists.

---

6.     Definition found at Merriam Webster Online Dictionary, located at www.m-w.com (last accessed on February 26, 2008).

[¶15.] Since there is an ambiguity, we can examine extrinsic evidence to determine the intentions of the parties. When examining the document and the evidence, we conclude that "certificated personnel" means persons holding a teaching certificate issued by the South Dakota Department of Education and not a person holding a general certificate from a different entity.

[¶16.] First, there was testimony that Lillibridge negotiated his own salary increases, which would be prohibited by the MEA as it is the sole bargaining unit for its members. He claims that he did not negotiate his own salary, but the record reflects he asked the superintendent and principal for and received $3,100 extra duty pay based on his extra activities. Furthermore, his contract simply read "contract" and not "teacher contract." He was never placed on the teacher pay schedule. He was evaluated only once a year and the second and third evaluations were on the same forms used for teachers, but the fourth evaluation was conducted on a form provided by the Marines, while his first evaluation was entitled "non-certified personnel evaluation" staff and the last evaluation was entitled "support staff evaluation form." Under the negotiated agreement, a teacher must be evaluated twice a year using exclusively the MEA forms.

[¶17.] Therefore, the negotiated agreement and the parties' actions demonstrate that the parties did not intend "certificated personnel" to include everyone who possesses a certificate for their profession. Instead, the language means a person who holds a teaching certificate from the South Dakota Department of Education.

#24576

[¶18.] Even if we consider "certificated personnel" unambiguous, as the parties urge, we reach the same result. The term "certificated personnel" used in this document means personnel possessing a teaching certificate. The common usage of "certificated" is typically in reference to teaching and specifically, persons holding a teaching certificate. As one court found, "the terms [teacher or certificated employee] are well understood in the education community. The terms are generally interchangeable. Teachers are *certificated employees because they must possess a state teacher's certificate* in order to be permitted to teach in the public schools." Byrn v. Metropolitan Bd. of Public Educ., 1991 WL 7806, at *8 (TennCtApp 1991) (unreported) (emphasis added). When an education association and school district enter into a contract, it makes sense that certificated personnel means a teacher who holds a teaching certificate and not a person who holds a generic certificate qualifying them to perform their job, but not authorizing their teaching.

[¶19.] To construe certificated personnel in the manner urged by Lillibridge would produce an "absurd result" according to counsel for School District, who argues that Lillibridge's interpretation would mean that anyone holding some sort of certificate for their job, such as the school attorney, school nurse, school lunch supervisor, or even a custodian with a boiler operator certificate would be included within the collective bargaining unit of the Education Association.[7] We do not give

---

7. During a hearing in a related case, *Meade Education Association v. Meade School District*, 2008 SD 18, __ NW2d __, the president of the MEA, Mary Maher, testified that it was her and the MEA's position that any person holding a certificate, including all of the positions mentioned in paragraph

(continued . . .)

-8-

contracts such broad interpretations as to produce an absurd result. Kling v. Stern, 2007 SD 51, ¶8 n3, 733 NW2d 615, 618 n3. As the circuit court noted:

> A contract is interpreted "according to the natural and obvious import of the language, without resulting to subtle and forced construction for the purpose of either limiting or extending their operation." Citibank (S.D.), N.A. v. Hauff, 2003 SD 99, ¶12, 668 NW2d 528, 533 (citations and quotations omitted). Here the natural and obvious import of the language of the Negotiated Agreement does not automatically extend to individuals who hold a certificate for his or her respective profession.

[¶20.] Lillibridge does not fall under the negotiated agreement as he does not have a teaching certificate and therefore, was not "certificated personnel." We affirm the circuit court.

[¶21.] GILBERTSON, Chief Justice, concur.

[¶22.] KONENKAMP, ZINTER and MEIERHENRY, Justices, concur in result.

MEIERHENRY, Justice (concurring in result).

[¶23.] I agree with the analysis that the contract term "certificated personnel" is ambiguous and I concur in the holding that certificated personnel "means a person who holds a teaching certificate from the South Dakota

---

(. . . continued)

19, would be "regularly employed certificated personnel" and therefore, were part of the MEA's bargaining unit and covered under the negotiated agreement between School District and the MEA. This was her testimony even though some of the positions like nurses and attorneys actually require licenses or some of the positions were actually hourly and not salaried contractual positions. *See e.g.* Meade Educ. Assoc. v. Meade Sch. Dist., 2008 SD 18, ___ NW2d ___.

Department of Education." However, having found the term ambiguous, I would not analyze the outcome under the hypothetical that the term is unambiguous. The term must be one or the other. Having determined the term is ambiguous the analysis need go no further.

[¶24.]     KONENKAMP and ZINTER, Justices, join this special writing.