#26072-a-GAS

**2012 S.D. 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| RANDY KRAMER, an Individual, | Plaintiff and Appellant, |
| v. | |
| WILLIAM F. MURPHY SELF-DECLARATION OF TRUST and MIKE D. MURPHY, an Individual, | Defendants and Appellees. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge

\* \* \* \*

| | |
|---|---|
| SANDER J. MOREHEAD of Woods, Fuller, Shultz & Smith, PC Sioux Falls, South Dakota | Attorneys for plaintiff and appellant. |
| BRETT A. LOVRIEN of Cadwell, Sanford, Deibert & Garry, LLP Sioux Falls, South Dakota | Attorneys for defendants and appellees. |

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 14, 2012

OPINION FILED **06/27/12**

#26072

SEVERSON, Justice

[¶1.] Randy Kramer initiated a breach of contract action against Mike D. Murphy and the William F. Murphy Self-Declaration of Trust (Trust). The circuit court dismissed the case, finding that it was precluded from hearing the case under the terms of a forum-selection clause incorporated into the parties' contract. Kramer appeals. We affirm.

## BACKGROUND

[¶2.] Tri-State Ethanol, LLC owned an ethanol plant in Rosholt, South Dakota. Kramer was one of the members and managers of Tri-State Ethanol. Kramer was also a member of White Rock Pipeline, LLC, which owned a pipeline that supplied natural gas to Tri-State Ethanol. The other individuals and entities that held membership interests in White Rock Pipeline included Murphy, Walter Woods, Tri-State Ethanol, and the Trust.

[¶3.] In order to comply with various federal regulations, Tri-State Ethanol determined it was necessary to purchase the membership interests of Kramer, Murphy, Woods, and the Trust. To accomplish this, Tri-State Ethanol entered into a loan agreement (Loan Agreement) with Murphy and the Trust. Tri-State Ethanol's duty to repay the loan was evidenced by a $2,100,000 secured promissory note (Promissory Note) and a $380,000 secured balloon promissory note (Balloon Note).[1] The two notes were attached to the Loan Agreement.

---

1. The Loan Agreement provided that each party had the following financial interest in White Rock:

    1) Tri-State: $275,000

(continued . . .)

#26072

[¶4.] The Loan Agreement contained a forum-selection clause, which stated, "[Tri-State Ethanol] . . . agrees that at the sole election of [Murphy and the Trust], the jurisdiction and venue for any suit hereon shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois." The Promissory Note and the Balloon Note also contained similar forum-selection clauses.

[¶5.] To compensate the members who held an interest in White Rock Pipeline, an agreement to disburse funds (Disbursement Agreement) was also executed. The parties to the Disbursement Agreement included Murphy, Woods, Kramer, and the Trust.[2] The Disbursement Agreement provided that 79.3% of each monthly payment Tri-State Ethanol made on the Balloon Note was to be disbursed to Murphy, Walter Woods, Kramer, and the Trust until they were each fully compensated for the value of their respective interests.

[¶6.] The Disbursement Agreement was attached to the Loan Agreement along with the Balloon Note and the Promissory Note. However, the Disbursement Agreement did not contain a forum-selection clause.

_____

(. . . continued)
  2) William Murphy Trust: $78,497
  3) Mike D. Murphy: $78,504
  4) Walter Woods: $78,616
  5) Randy Kramer: $65,842

The two notes were to be paid back to Murphy and the Trust. Tri-State Ethanol was to receive a $275,000 set-off on the $2,100,000 Secured Promissory Note because of the value of its ownership interest in White Rock Pipeline.

2. Tri-State Ethanol was not a party to the Disbursement Agreement because it was to receive a set-off on the Promissory Note for its ownership interest in White Rock Pipeline.

[¶7.] Tri-State Ethanol was unable to meet its financial obligations and eventually filed for Chapter 11 bankruptcy. During the course of the bankruptcy proceedings, Murphy and the Trust reached a settlement agreement regarding payment of the Loan Agreement and the Disbursement Agreement. Murphy and the Trust, through its trustee, represented to the bankruptcy court that they would use the settlement proceeds to pay Kramer the amounts owed under the Disbursement Agreement. The bankruptcy court approved the settlement agreement.

[¶8.] After the settlement proceeds from Tri-State Ethanol's bankruptcy estate were distributed, Murphy and the Trust refused to pay Kramer the full amount listed in the Disbursement Agreement. Kramer then filed a complaint against Murphy and the Trust for breach of the Disbursement Agreement. The complaint was filed in the Second Judicial Circuit of South Dakota.

[¶9.] Murphy filed a motion to dismiss on the grounds of improper venue. He claimed that the forum-selection clauses contained in the Loan Agreement, the Balloon Note, and the Promissory Note controlled for any suit brought on the Disbursement Agreement. The circuit court agreed and dismissed the case. It found that while the Disbursement Agreement itself had no forum-selection clause, the other three agreements contained forum-selection clauses providing that the Fourteenth Judicial District in Rock Island County, Illinois was the proper forum. The circuit court reasoned that the agreements must be considered as a whole.

## STANDARD OF REVIEW

[¶10.]     To determine whether the circuit court erred in dismissing this case, we must interpret the terms of the parties' agreements. "The interpretation of a contract is a question of law, which is reviewed de novo." *Kernelburner, LLC v. MitchHart Mfg., Inc.*, 2009 S.D. 33, ¶ 7, 765 N.W.2d 740, 742 (quoting *Arch v. Mid-Dakota Rural Water Sys.,* 2008 S.D. 122, ¶ 7, 759 N.W.2d 280, 282).

## DECISION

[¶11.]     Kramer argues that the circuit court erred in granting Murphy's motion to dismiss. He emphasizes that the Distribution Agreement did not contain specific language incorporating the terms of the Loan Agreement, the Promissory Note, or the Balloon Note. In the absence of any such express language, Kramer argues that the agreements cannot be construed as a single contract.

[¶12.]     Kramer's argument is contrary to this Court's holding in *Baker v. Wilburn*, 456 N.W.2d 304 (S.D. 1990). In *Baker*, we recognized that "[a]ll writings that are executed together as part of a single transaction are to be interpreted together." *Id.* at 306 (citing Restatement (Second) Contracts § 202 (1981)). Thus, "[w]hen two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as *one contract*." *Id.* (quoting *GMS, Inc. v. Deadwood Social Club, Inc.,* 333 N.W.2d 442, 444 (S.D. 1983)).

[¶13.]     Here, in accordance with our holding in *Baker*, several facts exist which demonstrate that the documents at issue were executed together as a part of a single transaction. The documents were executed on the same day in order to

transfer ownership of White Rock Pipeline to Tri-State Ethanol. In addition, the Disbursement Agreement was dependant upon the execution of the Loan Agreement, the Promissory Note, and the Balloon Note. *Dakota Gasification Co. v. Natural Gas Pipeline Co. of Am.*, 964 F.2d 732, 735 (8th Cir. 1992) ("[H]inging one contract upon the execution of another contract . . . heightens the need for joint interpretation."). Finally, the documents were attached to each other and labeled sequentially. In light of these facts, the separate documents cannot be viewed in isolation, but "must be construed together as a single contract involving the same transaction." *Baker*, 456 N.W.2d at 306. *See Talley v. Talley,* 1997 S.D. 88, ¶ 23, 566 N.W.2d 846, 851 (construing four contracts together because they were executed simultaneously as part of a transaction to transfer a mother's interest in a ranch, ranch equipment, and certain tools to her son, and to provide for the mother and her cattle); *GMS*, 333 N.W.2d at 444 (construing a contract for deed and a bill of sale as one contract because they "were executed simultaneously, by the same parties, as part of the same transaction –the sale and purchase of . . . [certain] property"). *Cf. Ponderosa-Nevada, Inc. v. Venners*, 90 S.D. 579, 243 N.W.2d 801 (1976) (construing a contract for deed and an option agreement as two separate contracts because each contract related to a different piece of real property, provided for separate consideration, and required performance on different dates).

[¶14.] In *Baker*, we held that in determining whether separate documents are to be viewed as one contract, "it is not critical whether the documents were

executed at exactly the same time or whether the parties to each agreement were identical." *Baker*, 456 N.W.2d at 306. We explained,

> Where several writings are connected by internal references to each other, even if they were executed on different dates and were not among all of the same parties, they will constitute a single contract as long as they involve the same subject matter and prove to be parts of an entire transaction.

*Id.* (quotation omitted).

[¶15.]     In this case, the Loan Agreement references the Disbursement Agreement. It expressly provides that the proceeds of the Promissory Note and the Balloon Note "shall be advanced . . . in accordance with the Disbursement Agreement . . . ." The Disbursement Agreement also references the Loan Agreement and the Balloon Note. The recitals of the Disbursement Agreement state that the parties executed the Disbursement Agreement to provide a mechanism for them to receive payments for their respective membership interests in White Rock Pipeline. The Disbursement Agreement requires that monthly loan payments made pursuant to the terms of the Balloon Note were to be distributed to compensate those who held a membership interest in White Rock Pipeline. Read together, the documents at issue in this case "represent successive steps" taken in order to transfer ownership of White Rock Pipeline to Tri-State Ethanol. *Dakota Gasification Co.*, 964 F.2d at 734-35. The Disbursement Agreement, Loan Agreement, Promissory Note, and Balloon Note must be construed as a single contract involving the same transaction. After reviewing these documents collectively as a single contract, we believe the parties intended the venue for any

suit on the Disbursement Agreement to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.

[¶16.] The dissent notes, "The plain language of the Loan Agreement's recitals reflects that Tri-State Ethanol, White Rock, and Murphy were the only parties who intended to be bound by the terms of that agreement." *Dissent* ¶ 27. But Kramer signed the Loan Agreement in his individual capacity. In doing so, Kramer agreed "to accept the amounts set forth . . . [in the Loan Agreement], for [his] interest[] in White Rock."

[¶17.] The recitals of the Disbursement Agreement acknowledge that "the parties are . . . some of the signatories to [the] Loan Agreement . . . ." The recitals also note that the "Loan Agreement provides for the repayment of the membership interest in White Rock of the parties herein in the total amount of $301,459.00 . . . ." The Disbursement Agreement was to serve as no more than a mechanism for the parties "to repay their membership interest in White Rock out of the loan payments to the William F. Murphy Self-Declaration of Trust and Mike D. Murphy required by the Balloon Secured Promissory Note."

[¶18.] Moreover, the Promissory Note states, "The payment of this *Note* is secured by a Mortgage, Security Agreements, and Loan Agreement of even date herewith." (Emphasis added.) The term "Note" is also utilized elsewhere in the document to refer specifically to the Promissory Note. Likewise, the Balloon Note repeatedly uses the term "Note" when describing the rights and obligations of the parties under the Balloon Note. However, the choice of law and venue provisions of both the Promissory Note and the Balloon Note provide:

> The undersigned agrees that this *Agreement* shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The undersigned further agrees that at the sole election of the holder hereof, the jurisdiction and venue for any suit *hereon* shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.

(Emphasis added.)

[¶19.] If we view each of the documents at issue in this case as one contract, the use of the term "Agreement" instead of "Note" in the forum-selection clauses of both the Promissory Note and Balloon Note is significant. It indicates that the parties intended the venue for any suit on the collective agreement, including the Disbursement Agreement, to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.

[¶20.] After examining each of documents collectively as one contract, we hold the trial court did not err in finding that the parties intended the venue for any suit on the Disbursement Agreement to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois. The circuit court's dismissal of this case is affirmed.

[¶21.] GILBERTSON, Chief Justice, and MACY, Circuit Court Judge, concur.

[¶22.] KONENKAMP and ZINTER, Justices, dissent.

[¶23.] MACY, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

ZINTER, Justice (dissenting).

[¶24.] I agree with the majority's conclusion that "[t]he Disbursement Agreement, Loan Agreement, Promissory Note, and Balloon Note [may] be construed as a single contract involving the same transaction." *See supra* ¶ 15. But this "contract" contained the terms for: Tri-State Ethanol's agreement to acquire White Rock; Murphy's agreement to finance the Tri-State Ethanol–White Rock transaction; and, Murphy's agreement with others to distribute the loan proceeds. Therefore, the contract involved independent obligations and rights of multiple parties, and obviously, each party was not subject to each term of each agreement. Under those circumstances, we must examine the language of the forum-selection clauses to see if they *bound Kramer* in his suit on the Disbursement Agreement. They clearly did not.

[¶25.] The majority believes that if the agreements are reviewed "collectively," Kramer "intended the venue for any suit on the Disbursement Agreement to be . . . in . . . Illinois." *Id.* But there is no forum-selection language in the Disbursement Agreement to support that belief. Further, the majority's belief is not supported by the plain language of the Loan Agreement and Notes— the only agreements containing forum-selection clauses. The plain language of those agreements reflects that their forum-selection clauses only applied to *loan disputes* between the borrower (Tri-State Ethanol) and the lender (Murphy). Ultimately, there is no forum-selection term in any part of the "contract" that purports to require forum selection for suits on the Disbursement Agreement, an

agreement that required Murphy to distribute loan proceeds to persons like Kramer who were not parties to the financing agreements.

[¶26.]     The Court's analysis fails to acknowledge the cardinal rule that, in determining the meaning of a contract, "effect will be given to the plain meaning of its words." *In re Dissolution of Midnight Star Enters., L.P.*, 2006 S.D. 98, ¶ 12, 724 N.W.2d 334, 337. Courts look "to the language that the parties used in the contract to determine their intention," and if the parties' intention is made clear by the language of the contract "it is the duty of this [C]ourt to declare and enforce it." *See Pauley v. Simonson*, 2006 S.D. 73, ¶ 8, 720 N.W.2d 665, 667-68. "We will not create a forced construction or a new contract for the parties when the language is clear and we are able to ascertain the plain and ordinary meaning of the language used." *Cole v. Wellmark of S.D., Inc.*, 2009 S.D. 108, ¶ 14, 776 N.W.2d 240, 246.

[¶27.]     The plain language of the Loan Agreement's recitals reflects that Tri-State Ethanol, White Rock, and Murphy were the only parties who intended to be bound by the terms of that agreement.[3] Kramer was not a party to, and he had no rights or obligations under, the terms of the Loan Agreement other than to

---

3.    The Loan Agreement recited:

> This Loan Agreement is made and entered into as of the 15th day of October, 2002 by and between Tri-State Ethanol Company, LLC, a South Dakota limited liability company, hereinafter called ("Borrower"), White Rock Pipeline, L.L.C., a South Dakota limited liability company, hereinafter called ("White Rock") and the William F. Murphy Self-Declaration of Trust and Mike D. Murphy, hereinafter collectively called ("Murphy").

acknowledge the stated value of his interest in the pipeline.[4] Further, even though the Loan Agreement may have been a part of an overall "contract," the language of the forum-selection clause in the Loan Agreement bound only the "[B]orrower [(Tri-State Ethanol)]" and "Murphy," the lender. The clause did not purport to bind non-financing parties like Kramer. The clause provided:

> *[B]orrower [(Tri-State Ethanol)] and Murphy agree* that *this Loan Agreement,* the Notes, Mortgage, and Security Agreement shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The *Borrower [(Tri-State Ethanol)]* further agrees that at the sole election of *Murphy*, the jurisdiction and venue for any suit *hereon* [(the Loan Agreement)] shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.

(Emphasis added.) Kramer also could not have been bound to this term because it specifically recited the related agreements to which it applied and the Disbursement Agreement was excluded. Finally, Kramer could not have been bound by this term because it applied only to suits "hereon"; i.e., suits on the Loan Agreement. Kramer's suit was on the Disbursement Agreement.

[¶28.] Similarly, Kramer was not bound by the forum-selection clauses in the Promissory Note and Balloon Note. Kramer was not a signatory to, and he had no rights or obligations under, the notes. Further, even though the notes may have

---

4. There is no dispute that Kramer signed the Loan Agreement in his individual capacity solely for the purpose of "agree[ing] to accept the *amounts* set forth [in the Loan Agreement], for [his] interest[] in White Rock." (Emphasis added.) This suit does not involve a dispute over that amount. This is a suit on Murphy's failure to distribute Kramer's undisputed portion of the loan proceeds as required by the Disbursement Agreement. Kramer's agreement to accept the stated amount of his interest in the pipeline is irrelevant to the question whether disputes arising under the Disbursement Agreement were subject to forum selection.

been a part of an overall "contract," the forum-selection clauses in the notes bound only the borrower, "[t]he undersigned [Tri-State Ethanol]." They did not purport to bind non-financing parties like Kramer. Both clauses provided:

> The *undersigned* [(Tri-State Ethanol)] agrees that *this Agreement* [(the Promissory Note and the Balloon Note)] shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The *undersigned* [(Tri-State Ethanol)] further agrees that at the sole election of the holder hereof, the jurisdiction and venue for any suit *hereon* [(the notes)] shall be the Fourteenth (14th) Judicial District in Rock County, Illinois.

(Emphasis added.) Once again, Kramer could not have been bound by this term because it applied only to suits "hereon"; i.e., suits on the notes. Kramer's suit was on the Disbursement Agreement.

[¶29.] In sum, Kramer was not a party to any term requiring forum selection. Even though all of the agreements may be considered to be parts of one contract, the language of the forum-selection clauses in the Loan Agreement and notes plainly (and logically) applied only to the lender (Murphy) and the borrower (Tri-State Ethanol). No language in those forum-selection clauses even suggests that they were intended to apply to suits on a Disbursement Agreement that involved non-financing parties. Further, neither the majority opinion nor Murphy have identified any language in the Disbursement Agreement—the only agreement to which Kramer was a party—that incorporated the forum selection clauses by reference.[5] Therefore, even if the various agreements are "collectively" construed

---

5. The majority attempts to infer incorporation by drawing a distinction between the word "agreement" and the word "note" in the notes. *See supra* ¶ 19. The distinction is artificial. Obviously, a note is an agreement. Further,

(continued . . .)

as one contract, the borrower-lender terms of that contract do not reflect intent to bind Kramer to forum selection in suits on the Disbursement Agreement. On the contrary, a collective review of all agreements reflects the parties' intent to exclude forum selection in disputes arising on the Disbursement Agreement. The agreements were negotiated among sophisticated parties who included forum-selection clauses in the notes and Loan Agreement, while simultaneously excluding any forum-selection provision from the Disbursement Agreement, an agreement involving different parties.[6] Because the plain language of the agreements reflects no intent to authorize forum selection in suits brought on the Disbursement Agreement, I respectfully dissent.

[¶30.]     KONENKAMP, Justice, joins this dissent.

_____

(. . . continued)

there is no language in the notes' forum-selection clauses that even suggests the singular form of the phrase "*this* agreement" was actually intended to mean the Disbursement Agreement, the Loan Agreement, the Promissory Note, and the Balloon Note.

6.     The Court downplays the absence of a forum-selection clause in the Disbursement Agreement. The court states that the Disbursement Agreement was "no more than a mechanism for the parties 'to repay their membership interest in White Rock out of the loan payments to the William F. Murphy Self-Declaration of Trust and Mike D. Murphy required by the Balloon Secured Promissory Note.'" *See supra* ¶ 17. Nevertheless, the parties to that "mechanism" are entitled to have their suits on the mechanism resolved in accordance with the intent of the parties as is reflected in the plain language of the parties' agreement.