GILBERTSON, Chief Justice (on reassignment).
[¶ 1.] Larry Saathoff sued Myron Kuhlman for defamation and intentional *802 infliction of emotional distress based on the implications of a letter to the editor authored by Kuhlman and published in area newspapers. Kuhlman sued Saathoff, Sandra Larson, and Lance Noem for defamation based on three allegations set forth in a petition they circulated. The circuit court granted summary judgment in both suits finding, in part, that the statements were true, or at least half-truths. Saathoff appealed. Kuhlman filed a notice of review, preserving his appeal should this Court reverse the circuit court on Saa-thoffs claim of error. We affirm.
FACTS
[¶ 2.] Saathoff began working for the Hamlin County Highway Department in 1978. He was appointed Hamlin County Highway Superintendent in September 1985 and served in that capacity until he resigned on March 16, 2004.
[¶ 3.] Kuhlman served as a Township Supervisor for Oxford Township in Hamlin County from 1978 until 2001. He was elected to the Hamlin County Commission in 2001. Kuhlman served as vice chairman of the commission in 2001, and was chairman from 2002 until mid-2004.
[¶ 4.] In early 2004, allegations arose that, when purchasing new highway equipment from Butler Machinery Company (Butler Machinery) in 1991 and 1994, Saa-thoff swapped the new tires and cutting edges on the new equipment with the tires and cutting edges on the old equipment being traded-in. As a result of the swap, the county’s new motor graders were purchased without new tires and cutting edges. When Kuhlman heard about these allegations, he confronted Saathoff. Saa-thoff claimed that the old machines had better quality tires and cutting blades, and that he was saving the county money by following this practice. Saathoff claimed that the Hamlin County Commission and Butler Machinery were aware of and approved the swapping on the occasions it occurred.[1]
[¶ 5.] Kuhlman reported the allegations to State’s Attorney Justin Hyde, who conducted an investigation. Hyde reported to the commission that he found nothing in the bid specifications authorizing the swapping practice. He speculated that Saathoff had some “off the books” arrangement with Butler, allowing Butler to lower its bid to ensure acceptance.[2] Hyde indicated it was not proper bidding practice to create bid specs and then deviate from them after the bids were accepted. He informed the commission that the statute of limitations had expired on these activities, but any future occurrences would be prosecuted. Upon receiving this information, the commission met with Saathoff and asked him to resign. The commission had previously decided that if Saathoff refused to resign, proper steps would be taken to formally terminate him. Saathoff resigned on March 16, 2004.
[¶ 6.] Following Saathoffs resignation, Saathoff, Larson, and Noem circulated petitions to have Kuhlman removed from the county commission. The petitions alleged that Kuhlman participated in illegal activity while on the commission, three instances of which are at issue: (1) that Kuhlman met alone with Hamlin County Highway Department employee Steven Palo and discussed Saathoffs resignation, that *803 Kuhlman told Palo not to mention the meeting to anyone, and that the commission did not approve of this meeting; (2) that Kuhlman demanded the April 6, 2004, Hamlin County Commission meeting minutes be changed to reflect that all questions asked during the meeting regarding Saathoff s resignation were answered; and (3) that Kuhlman instructed four county employees to use county equipment to haul fieldstone from his private property. Saa-thoff, Larson, and Noem asked State’s Attorney Hyde to investigate these matters. Upon investigating, Hyde concluded that the allegations lacked merit.
[¶ 7.] Saathoffs resignation, the petition to remove Kuhlman from office, and the subsequent investigation garnered significant local press. There were several letters to the editor and stories published regarding the events. On September 1, 2004, Kuhlman wrote a letter to the editor that was published in the Hamlin County Herald, Enterprise, the Estelline Journal, and the Hamlin County Republican. One sentence in this letter is the basis of Saa-thoffs claim. It reads as follows: “After receiving information that as many as 60 new tires and cutting edges had disappeared from new equipment purchased in 1991 and 1994, the State’s Attorney was consulted.”
[¶ 8.] Saathoff filed suit against Kuhl-man for defamation and intentional infliction of emotional distress, based on this single sentence. After answering and pleading defenses, Kuhlman moved for summary judgment. In a memorandum decision dated January 23, 2006, Judge Rodney J. Steele granted summary judgment on the intentional infliction of emotional distress claim,[3] but denied summary judgment on the defamation claim. Based on Judge Steele’s rationale for not dismissing the defamation claim, Kuhlman sought leave to amend his answer to assert a counterclaim against Saathoff, and to serve third-party complaints against Larson and Noem, alleging defamation based on the circulated petition. The parties stipulated to, and the court granted, the motion to amend the answer and serve the third-party complaints. Thereafter, Saathoff, Larson, and Noem moved for summary judgment on the defamation claims. In his January 10, 2007, memorandum opinion, Judge Steele granted summary judgment to Noem,[4] but denied Saathoff s and Larson’s motions.
[¶ 9.] After Judge Steele retired, Judge Tim D. Tucker presided over this case. Judge Tucker reconsidered the previously filed summary judgment motions. After conducting another summary judgment hearing, he granted each party’s summary judgment motion. Specifically, Judge Tucker held: (1) the statements in the petition and the letter to the editor were political in nature; (2) the common interest privilege is involved and it heightens the standard in the case; and (3) the statements were all true, even if half-truths.
[¶ 10.] On April 17, 2008, Saathoff filed a notice of appeal claiming the grant of summary judgment to Kuhlman was error. By notice of review, Kuhlman preserved the issue whether the circuit court erred in granting summary judgment to Saathoff and Larson, and asked that it be considered only in the event this Court reverses the circuit court’s grant of summary judgment to Kuhlman. We affirm.
*804 STANDARD OF REVIEW
[¶ 11.] Our standard of review on summary judgment is well settled:
In reviewing a grant or a denial of summary judgment under SDCL 15 — 6—56(e), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.
Pellegrino v. Loen, 2007 SD 129, ¶ 13, 743 N.W.2d 140, 143.
ISSUE
[¶ 12.] Whether the circuit court erred in granting summary judgment to Kuhlman, Saathoff, and Larson after determining the veracity of statements arguably amenable to contrary inferences.
ANALYSIS AND DECISION
[¶ 13.] “Before the trial judge may examine a summary judgment motion under SDCL 15-6-56(c) in a libel action, the judge must know the levels of proof for malice at the trial.” Sparagon v. Native Am. Publishers, Inc., 1996 SD 3, ¶ 31, 542 N.W.2d 125, 133. This requires a determination of whether the plaintiff was a public or private figure under the “New York Times” test. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). We agree with the circuit court that the parties in this action are public figures, at least in regard to the allegedly defamatory statements.[5]
[¶ 14.] As a consequence of their public figure status, the litigants face a *805 higher evidentiary burden in proving their claims.
A public figure bringing a libel ease faces a higher burden of proof than an ordinary civil litigant as a result of the ‘New York Times Rule.’ This rule prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not. The rule further requires that actual malice be shown ... by ‘clear and convincing proof.’
Sparagon, 1996 SD 3, ¶ 19, 542 N.W.2d at 131 (citations omitted) (emphasis added).
[¶ 15.] This higher evidentiary burden to prove “actual malice” extends not only to the proof required at trial, but also in resisting summary judgment.
[W]here the New York Times “clear and convincing” evidence requirement applies, the trial judge’s summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a New York Times case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.
Janklow v. Viking Press, 459 N.W.2d 415, 419 (S.D.1990) (overruled on other grounds by Paint Brush Corp., Parts Brush Div. v. Neu, 1999 SD 120, 599 N.W.2d 384)(emphasis added) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56, 106 S.Ct. at 2513, 2514, 91 L.Ed.2d at 216 (1986)). “Clearly, the plaintiff has a much greater burden of proof, not only at the trial level, but at the summary judgment stage.” Id.
[¶ 16.] “In [Anderson ], the Court stated that when the trial court examines a summary judgment motion in a libel claim, it must ‘bear in mind the actual quantum and quality of proof necessary to support liability.’” Sparagon, 1996 SD 3, ¶ 30, 542 N.W.2d at 133 (quoting Anderson, 477 U.S. at 254, 106 S.Ct. at 2513). Saathoff identifies no defamatory statements other than Kuhlman’s letter to the editor. Further, he offers no other evidence that suggests Kuhlman’s actual malice. Several times, Saathoff states that “the facts are clear” that actual malice was present. However, he points to no “facts” other than Kuhlman’s use of the term “disappeared.” Saathoff s lack of evidence is most clearly articulated in his response to Kuhlman’s interrogatories:
27. Please state all facts, which support your allegation that any communication made by [Kuhlman] regarding [Saathoff] was made with malice and/or with the intent to cause injury to the plaintiff.
[Saathoff s] Answer: The letter speaks for itself. [Kuhlman’s] statement to [Saathoff] in March [2001][6] displays the regard and malice [Kuhlman] had toward [Saathoff],
(Emphasis added.)
[¶ 17.] According to Saathoff, Kuhlman, as a commissioner supervising Saathoff, stated that he was dissatisfied with Saa-thoffs job performance and that his goal was to “get rid of me.” Saathoff did not allege that this conversation was defamato *806 ry, only that it indicated malice. However, he also admitted that this conversation was only about professional matters, not personal animosity between the parties.
[TJhere is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511 (emphasis added). At most, this is only a colorable claim of Kuhlman’s actual malice; Saathoffs mere inferences do not meet the heightened “clear and convincing standard” described in Anderson.
[¶ 18.] Anderson rejects a plaintiffs efforts to manufacture “genuine issues of material fact,” without evidence, in order to survive summary judgment.
Respondents argue, however, that whatever may be true of the applicability of the “clear and convincing” standard at the summary judgment ... stage, the defendant should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue.... We do not understand [the plaintiffs cited authority] to hold that a plaintiff may defeat a defendant’s properly supported motion for summary judgment in a ... libel case ... without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant’s denial of ... legal malice. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence
[[Image here]]
Anderson, 477 U.S. at 256-57, 106 S.Ct. at 2514 (emphasis added).
[¶ 19.] Because no memorandum decision was in the record, we are unable to determine the authority upon which Judge Tucker based his decision. However, “[t]hat the trial court may have entered summary judgment for the wrong reason does not bar this court from affirming the judgment.” Staab v. Cameron, 351 N.W.2d 463, 466 (S.D.1984). The circuit court could have properly ordered summary judgment under Anderson and our cases following that authority.
[¶ 20.] Procedurally, in New York Times cases, the plaintiff must prove the viability of his or her case in withstanding summary judgment before defenses are raised by the opposing party and considered by the circuit court. Therefore, we do not reach the issues of the “truth defense” to defamation,[7] or the *807 conditional privilege under SDCL 20-11-5(3).[8]
[¶ 21.] Because we affirm the circuit court’s decision, we do not reach Kuhl-man’s preserved issue.
[¶ 22.] Affirmed.
[¶ 23.] ZINTER, Justice, and BASTIAN, Circuit Judge, concur.
[¶ 24.] KONENKAMP, Justice, and SABERS, Retired Justice, dissent.
[¶ 25.] BASTIAN, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.

. Saathoff claims that bidding documents and Hamlin County Commission meeting minutes evidence knowledge of at least one instance of the swapping practices.

. The record indicates that at least one of the commissioners believed Saathoff had an unhealthy bias in favor of Butler Machinery and the Caterpillar brand equipment sold by them.

. Dismissal of the intentional infliction of emotional distress claim has not been appealed.

. The grant of summary judgment to Noem has not been appealed. Therefore, Noem is not a party in this consolidated appeal.

. The circuit court did not directly identify the parties as "public figures.” However, it did state, in its oral conclusions, that: "The court finds that the context of both of the statements involved in this action are in the political arena, clearly the petitions were political in nature, the letter to the editor is in response to that petition, and is also political in nature.” We believe the court’s statements evidence a finding that the parties are "public figures.”
Whether a person is a public figure in a libel case is a question of law. Nelson v. WEB Water Dev. Ass’n, Inc., 507 N.W.2d 691, 697 (S.D. 1993). In Sparagon, this Court adopted the U.S. Supreme Court’s definition of a public figure. Sparagon, 1996 SD 3, ¶¶ 18-23, 542 N.W.2d at 131. We stated:
In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn in a particular public controversy and thereby becomes a public figure for a limited range of issues.
Id. 1996 SD 3, ¶ 23, 542 N.W.2d 125 (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 351, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789, 812 (1974)).
For the purposes of this case, it is not necessary to identify whether Saathoff is classified as a public figure for all purposes or merely a "limited” public figure. It is sufficient that Saathoff has voluntarily injected himself into a public controversy regarding these matters through the petition to oust Kuhlman. At minimum, he is a "limited” public figure for these issues and is, therefore, subject to the heightened evidentiary standards of New York Times. While we review questions of law de novo, we believe the circuit court’s statements, quoted above, reflect this rationale in support of its conclusions. We agree with this assessment.

. Saathoff clarified the year of this conversation in his deposition.

. The dissent agrees that this is a "public figure” case, yet it skips the first inquiry in such cases: whether Saathoff met his summary judgment burden of identifying clear and convincing evidence creating an inference of malice. “The first step is proving that there has been a publication of a false or defamatory statement with knowledge of its falsity or a reckless disregard for the truth.” Janklow, 459 N.W.2d at 419 (S.D.1990) (citing Harte-Hanks, Inc. v. Connaughton, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)). Instead, the dissent proceeds directly to the second inquiry, "whether a statement implies a false assertion of objective fact,” and suggests that a material fact remains in issue regarding the truth or falsity of the statement. See infra ¶¶ 30-34. Although the *807 dissent asserts that the words used by Kuhl-man create these issues of material fact, it cites no "clear and convincing evidence " suggesting actual malice other than the word "disappeared.” The inference that Saathoff and the dissent suggest might be drawn from Kuhlman’s use of the word “disappeared" is insufficient to support the clear and convincing evidentiary burden necessary to survive summary judgment. This word does not create an issue of material fact.
The dissent's interpretation of the passage quoted from Anderson, infra ¶ 30, ignores and undermines the rest of the Anderson decision. The dissent states, "... Anderson directs that if the plaintiff's claim is based on language that is potentially defamatory, it is the finder of fact’s duty to make that determination.” See infra V 30 n. 9. Essentially, the dissent argues that any word that might have the slightest defamatory interpretation, however remote, creates an issue of material fact, thus precluding summary judgment. In application, the dissent suggests that the plaintiff simply needs to show that a statement was made and that he or she feels it was defamatory in order to survive summary judgment. Clearly, this was not the holding of Anderson. The dissent's interpretation finds no support in that opinion and is antithetical to the "clear and convincing” summary judgment standard applied in that case.

. Similarly, we do not reach Saathoff's argument that Kuhlman defamed him through the publication of his letter in regional newspapers with distribution outside Hamlin County. We note that the newspaper in New York Times v. Sullivan was published in New York, New York and had worldwide distribution. The newspaper advertisement at issue in New York Times, which criticized public officials in Montgomery, Alabama, reached readers well beyond the citizens of Montgomery.