#26641-a-SLZ

**2013 S.D. 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LAUREL NIESCHE, AS SPECIAL
ADMINISTRATRIX OF THE
ESTATE OF MARY LOU FOX,                    Plaintiff and Appellant,

    v.

TODD D. WILKINSON, ADMINISTRATOR
OF THE ESTATE OF ROBERT FOX and
SUBSTITUTE TRUSTEE OF
SILVER FOX TRUST,                          Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TIM D. TUCKER
Judge

\* \* \* \*

ROBERT A. MARTIN
Rapid City, South Dakota                   Attorney for plaintiff
                                           and appellant.


MICHAEL J. SCHAFFER
PAUL H. LINDE of
Schaffer Law Office, Prof. LLC
Sioux Falls, South Dakota                  Attorneys for appellee.

\* \* \* \*

ARGUED ON OCTOBER 1, 2013

OPINION FILED **12/11/13**

#26641

ZINTER, Justice

[¶1.]      Laurel Niesche is the daughter of Mary Lou Fox. After Mary Lou died, Niesche sued Mary Lou's former husband, Robert Fox. Niesche alleged that Mary Lou jointly owned 960 acres of farmland with Robert. Niesche contended that Robert deprived Mary Lou of her ownership interest in the land, which deprived Niesche of an inheritance from Mary Lou. The circuit court granted Robert summary judgment. Niesche appeals.[1] We affirm.

*Facts and Procedural History*

[¶2.]      Robert and Mary Lou married each other twice. The second marriage was in 1972. They remained married until Mary Lou's death in 2007. Mary Lou had three children from a previous marriage. Robert had no children.

[¶3.]      Robert acquired three quarter-sections of farmland by deeds from third parties before he married Mary Lou. During their marriage, Robert acquired three additional quarter-sections of farmland by deeds from or through his mother. All 960 acres were titled in Robert's name, and the property remained titled in his name alone. In contrast, when Robert and Mary Lou purchased a home in Huron, they titled it in joint tenancy.

[¶4.]      At different times during the marriage, Mary Lou and Robert co-signed loan documents (e.g., financial statements, promissory notes, and mortgages) that involved the 960 acres. The loans were used in part to satisfy debt Robert owed on

---

1.    Niesche's notice of appeal was filed on March 15, 2013. Robert died on April 11, 2013.

-1-

the farmland he acquired before the marriage. The loans were also used to purchase the additional farmland Robert acquired during the marriage.

[¶5.]     In 2005, Robert contracted to sell 160 acres of the farmland to Spink Hutterian Brethren, Inc. (Brethren). He also entered into an option contract and lease with Brethren for the remaining 800 acres. Although Mary Lou was not an owner of record, she and Robert signed the documents relating to these agreements. These documents, as well as some of the loan documents, referred to Mary Lou and Robert collectively as the "sellers," "owner," "lessors," or "mortgagor." Mary Lou and Robert later signed a warranty deed, which conveyed the 160 acres to Brethren. The deed referred to Robert and Mary Lou as "grantors." The deed was to be held in escrow until final payment, in accordance with the contract for deed.

[¶6.]     In 2006, Robert created a revocable trust.[2] He was the sole trustor and trustee. On the day the trust was created, Robert and Mary Lou signed a warranty deed conveying all the farmland to the trust.[3] This deed also recited that Mary Lou and Robert were the "grantors." Brethren ultimately obtained the 160 acres by warranty deed from the trust. Brethren also exercised its option to purchase the remaining 800 acres. Robert, acting as trustee, entered into a contract for deed with Brethren for the remaining 800 acres.

---

2.     The trust provided that Mary Lou would receive annual payments of $60,000 if Robert died before her. Mary Lou's children were also to receive a one-eighth interest in the land. In August 2007, Robert amended the trust to exclude Mary Lou's children.

3.     The deed included the 160 acres previously deeded to Brethren, apparently because Brethren had not yet made its final payment on the contract.

[¶7.]     In 2010, Niesche sued Robert for an inheritance she claimed she should have been entitled to receive from Mary Lou.  Niesche sought the inheritance on two theories.  She first argued that because Mary Lou was married to Robert, Mary Lou held the 960 acres as a tenant in common with Robert.  Niesche contended that the various co-signed documents established that Mary Lou and Robert owned the land as tenants in common even though Robert was the only titleholder of record.  Niesche also sought the inheritance on the theory that Robert had verbally agreed that half the land would go to Mary Lou's children.  Niesche alleged that Mary Lou was deprived of a property interest in the farmland because Robert dominated the marriage, particularly the property transactions, and he was controlling to the point that Mary Lou did whatever he asked.

[¶8.]     Niesche initially pleaded causes of action for breach of marital and fiduciary duty, fraud and deceit, intentional interference with inheritance, and unjust enrichment, along with claims for punitive damages and attorney's fees.  She later added causes of action for constructive trust, estoppel, and undue influence.  Robert filed a motion for summary judgment on all causes of action and claims.  The circuit court granted Robert summary judgment, and Niesche appeals raising the following issues:

1.     Whether Mary Lou and Robert's marriage created a confidential and fiduciary relationship that required Robert to prove he did not improperly obtain sole title to the 960 acres.

2.     Whether the circuit court erred in concluding that Mary Lou had no ownership interest in the 960 acres.

3.     Whether the circuit court erred in dismissing Niesche's causes of action and her claims for punitive damages and attorney's fees.

*Decision*

[¶9.]     On appeal from a grant of summary judgment, "we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Hass v. Wentzlaff*, 2012 S.D. 50, ¶ 11, 816 N.W.2d 96, 101 (quoting *Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804).  We view the evidence in favor of the nonmoving party and reasonable doubts are resolved against the moving party, but "[t]he nonmoving party . . . must [have] present[ed] specific facts showing that a genuine, material issue for trial exist[ed]."  *Id.* (quoting *Saathoff*, 2009 S.D. 17, ¶ 11, 763 N.W.2d at 804).  "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law . . . ."  *A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 14, 719 N.W.2d 780, 785 (quoting *S.D. State Cement Plant Comm'n v. Wausau Underwriters Ins. Co.*, 2000 S.D. 116, ¶ 9, 616 N.W.2d 397, 401).  Further, a nonmoving party's "[m]ere general allegations and denials which [do] not set forth specific facts will not prevent the issuance of [summary] judgment."  *State Auto Ins. Cos. v. B.N.C.*, 2005 S.D. 89, ¶ 6, 702 N.W.2d 379, 383 (quoting *Casazza v. State*, 2000 S.D. 120, ¶ 16, 616 N.W.2d 872, 876).

[¶10.]     In this case, there are no genuine issues of material fact.  Niesche claims many factual disputes, but her claims are general allegations, general denials, or allegations of fact that are not material because they would not affect the outcome of the litigation.  Therefore, we must determine whether Robert was entitled to summary judgment under the undisputed material facts.

*The Confidential and Fiduciary Marital Relationship*

[¶11.]     Niesche first contends that Mary Lou and Robert's marriage created a confidential and fiduciary relationship. Niesche contends that such a relationship required Robert to show that he did not use "unfair advantage of his dominant position" to obtain sole legal title to the land and later to obtain Mary Lou's signature on the warranty deed conveying the land to the trust. Niesche argues that the circuit court erred as a matter of law in not requiring Robert to make this showing.

[¶12.]     Niesche's argument fails because it presupposes that Mary Lou had, or could claim, an ownership interest in the land prior to her death. As is explained *infra*, ¶¶ 17-29, Mary Lou never had or could claim any ownership interest in the land. Therefore, Robert could not have improperly deprived Mary Lou of her property interest through his position in the marital relationship.

[¶13.]     Niesche's reliance on *Davies v. Toms,* 75 S.D. 273, 63 N.W.2d 406 (1954), is misplaced. In *Davies*, the plaintiffs argued that a deed should have been set aside because the defendants unduly influenced the grantor (their sister) into deeding to the defendants land that would have otherwise gone to the plaintiffs by operation of the grantor's will. 63 N.W.2d at 407. This Court noted that when a relationship of trust and confidence had been shown between the *grantor* and the defendants, the burden of going forward with evidence shifted to the defendants to show that they had not taken an unfair advantage of their dominant position to obtain the deed. *Id*. at 410. But here, Robert's grantor was not Mary Lou. Robert

obtained the farmland from third parties. Because there is no allegation of a fiduciary relationship between the *grantors* and Robert, *Davies* is inapposite.

[¶14.] Niesche, however, also contends that Robert's property transactions were subject to statutory restrictions governing persons occupying confidential relations. Niesche relies on SDCL 25-2-10, which provides:

> Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, *subject, in transactions between themselves,* to the general *rules which control the actions of persons occupying confidential relations* with each other, as prescribed by law.

(Emphasis added.) Niesche's reliance on this statute is misplaced. None of the transfers of property interests in the 960 acres involved transactions between Mary Lou and Robert, the persons occupying confidential relations. All of the transactions involved transfers between Robert and third parties.

[¶15.] Niesche additionally contends that because of the marital relationship, Mary Lou was entitled to a half interest in the property unless Robert showed "that he used his own separate funds, not joint funds with Mary Lou, to pay off his pre-marriage debt on his three quarters and his subsequent purchase of the three additional quarters that he titled in his sole name." This contention assumes that a married person automatically obtains a property interest in the other spouse's separate property by assisting in financing the property with jointly owned funds. Because Niesche cites no authority for this novel proposition, it is waived. *See* SDCL 15-26A-60(6); *Veith v. O'Brien*, 2007 S.D. 88, ¶ 50, 739 N.W.2d 15, 29 (citations omitted).

[¶16.]    We conclude that in this case, the burden of proof was correctly allocated. Mary Lou did not have and could not claim an ownership interest in the 960 acres that could have been improperly deprived by Robert because of their marital relationship.

*Ownership of the 960 Acres*

[¶17.]    Niesche argues that the circuit court erred in concluding that Mary Lou had no ownership interest in the 960 acres. Niesche acknowledges that the 960 acres have always been titled solely in Robert's name. However, Niesche advances two arguments asserting that Mary Lou owned the property as a tenant in common with Robert. Niesche first argues that Mary Lou and Robert were tenants in common because Mary Lou and Robert were married and the co-signed documents referring to them collectively as the "sellers," "grantors," "owner," "lessors," or "mortgagors" of the farmland. Niesche focuses on language in the contract for deed, option contract, and lease agreement with Brethren (Brethren documents), as well as the warranty deed conveying the 960 acres to the trust.[4] She contends that the Brethren documents "clear[ly] and accurately state [Mary Lou's] ownership interest" in the 960 acres, and the warranty deed "acknowledges and confirms Mary Lou's existing ownership interest[.]" Niesche also argues that a tenancy in common was created because Robert made a verbal promise that Mary Lou's children would get half the farmland when she died. We address these arguments in turn.

---

4.    Niesche also relies on documents associated with loans that were secured by the farmland.

[¶18.]     Niesche first argues that because of the marriage and the co-signed documents, a conveyance was unnecessary to grant Mary Lou a tenancy in common in Robert's farmland. This argument overemphasizes the significance of marriage in the ownership of property. Niesche fails to recognize that outside the context of divorce, support, and homestead, marriage does not vest in one spouse an interest in the other's separate property. *See* SDCL 25-2-4 ("Neither husband nor wife has any interest in the property of the other, excepting their respective rights for support as specifically provided by law, and except that neither can be excluded from the other's dwelling."); SDCL 25-2-7 ("Each spouse shall have and retain after marriage all the civil and property rights of a single person. Each may buy and sell, receive and convey, or dispose of by will, or otherwise dispose of any real or personal property belonging to him or her or in which he or she may have an interest, without joining the name of the spouse except for the homestead."); SDCL 25-2-8 ("A person may without the consent of his or her spouse convey his or her separate property."). Thus, in this jurisdiction, separately owned property does not become jointly owned property upon marriage. *See* SDCL 25-2-4, -7. "Other than the duty of support, a spouse does not have any vested rights in the property of his or her mate during the course of their marriage." *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d 210, 214 (citations omitted). "[S]pouses are entitled to maintain separate property and do with it as they see fit." *Id.* (citations omitted).

[¶19.]     Apparently recognizing this principle of law, Niesche cites various authorities for her argument that the party-identification language in the co-signed documents created a tenancy in Mary Lou. *See* SDCL 43-26-1, 43-26-2, 43-25-1, 43-

4-4; South Dakota Title Standard 2-03; *Kjolseth v. Kjolseth*, 27 S.D. 80, 129 N.W 752 (1911); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D. 1978). These authorities do not support her argument.

[¶20.]     Niesche's statutes and title standard, on their face, do not recognize the creation of a tenancy in common solely through language in a real-estate document describing the parties.[5] On the contrary, South Dakota Title Standard 2-03 specifically requires that a transfer of a real-property interest must be by "words of conveyance." In this case, none of the co-signed documents contained any words of conveyance granting or transferring a property interest to Mary Lou.

[¶21.]     Niesche's case authorities also fail to support her argument that the co-signed documents created a tenancy in Mary Lou. *Kjolseth v. Kjolseth* involved an actual conveyance by deed to a wife. *See* 129 N.W at 753-54. In this case, there

---

5.     SDCL 43-26-1 provides: "An agreement to sell real property binds the seller to execute a conveyance in form sufficient to pass the title to the property."

SDCL 43-26-2 provides: "An agreement on the part of a seller of real property to give the usual covenants, binds him to deliver a warranty deed in the form prescribed by 43-25-5 or to insert in the grant covenants of seizin, quiet enjoyment, further assurance, general warranty, and against encumbrances."

SDCL 43-25-1 provides: "An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."

SDCL 43-4-4 provides: "A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general, except that a consideration is not necessary to its validity."

South Dakota Title Standard 2-03 provides: "The vendor and vendee under an executory contract for deed each have an interest in the real property which is capable of conveyance, and transfers of any interest must meet the statutory requisites, including words of conveyance."

was no deed conveying any property interest to Mary Lou. *Kittelson v. Kittelson* involved a divorce. In a divorce, a court is dividing the spouses' property irrespective of their ownership interests. *See* SDCL 25-4-44 ("When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife."); *see also Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d at 214 (explaining that "South Dakota is an all property state" when it comes to property divisions in divorces "regardless of title or origin" (citation and internal quotation marks omitted)). This case is not a divorce, it involves separate property, and there was no conveyance of a property interest to Mary Lou. Therefore, Niesche's case authorities are inapplicable.

[¶22.]     Several courts have concluded that similar co-signed documents do not create the ownership interest Niesche claims. In *State v. Kemmerer*, this Court noted that it is "usual custom" for spouses to co-sign deeds, even when one spouse has no ownership interest. *See* 15 S.D. 504, 90 N.W. 150, 150 (1902). The signature, however, does not create an ownership interest or entitle the non-owning spouse to any part of the proceeds. *Id.*

[¶23.]     In *In re Estate of Roberts*, the Nebraska Supreme Court concluded that real-estate contracts signed by a husband and wife as "Sellers" "did not convey or otherwise create any interest in [the wife]." 264 N.W.2d 865, 866-67 (Neb. 1978). Instead, the court applied the presumption that the wife signed the contracts simply "to bar any interest she may have had in the subject [of the] real estate." *Id.* at 867. The court concluded that the non-owning wife could not overcome that presumption

without "special language in the contracts indicating that [she] was to own the proceeds thereof jointly with her husband." *Id.*

[¶24.]  The Iowa Supreme Court also rejected a claim similar to Niesche's. *See In re Estate of Wulf,* 471 N.W.2d 850, 852 (Iowa 1991).  In that case, a wife claimed that even though her husband held sole title to the real estate, "she was entitled to receive outright an undivided one-half interest in . . . [a] real estate contract as her separate property by virtue of her inclusion in the contract as seller." *Id.* at 852.  But like the wife in *Roberts*, the wife in *Wulf* was unable to show "special language in the contract or deed entitling the non-owner spouse to the payments . . . ." *Id.* at 852-53 (citations omitted).

[¶25.]  In this case, other than boilerplate terms reciting the parties' status, there is no special language in the co-signed documents transferring an ownership interest in the land to Mary Lou.  On the contrary, the record reflects that the co-signed documents were executed to preempt a cloud on title arising from Mary Lou's potential homestead interest.

[¶26.]  SDCL 43-31-17 provides that "[a] conveyance or encumbrance of a homestead by its owner, if married and both husband and wife are residents of this state, is valid if both husband and wife concur in and sign or execute such conveyance or encumbrance either by joint instrument or by separate instruments."  Thus, we have recognized: "Among the statutory enactments designed to protect the homestead exemption is the requirement that both the husband and wife must join in a conveyance or encumbrance of the homestead as a condition precedent to the

validity of such conveyance or encumbrance." *Speck v. Anderson*, 318 N.W.2d 339, 343 (S.D. 1982).

[¶27.] We acknowledge Niesche's point that a homestead interest could not have been claimed on the entire 960 acres, but a homestead interest may change and apply to different property, subject to the holder's intent. *See* SDCL 43-31-9; *Harter v. Davison*, 53 S.D. 399, 220 N.W. 862, 863 (1928).[6] That is significant in real-estate transactions because discovering intent is often difficult. *See Harter*, 220 N.W. at 863. Therefore, as the attorney who drafted the conveyance documents in this case explained: Mary Lou was included as a signatory so the purchasers could be satisfied that they were obtaining clear title, without fear that Mary Lou might later claim a homestead interest in any part of the purchased property.[7]

[¶28.] In this case, the record reflects that Robert and Mary Lou executed the co-signed documents to preempt a claim of homestead rather than to transfer to or acknowledge a property interest in Mary Lou. More importantly, none of the documents contained words of conveyance transferring any property interest to her.

---

6. SDCL 43-31-9 provides:

> The owner may from time to time change the limits of the homestead by changing the metes and bounds, as well as the record of the description, or may change it entirely; but such changes shall not prejudice conveyances or liens made or created previously thereto; and no such change of the entire homestead made without the concurrence of the husband or wife shall affect his or her rights or those of the children.

7. Niesche contends that Attorney Wilkinson's testimony explaining the reasons for including Mary Lou on the documents was inadmissible parol evidence. We disagree. The testimony was not offered to change the terms of the documents. It was offered to explain why Mary Lou was a signatory.

The absence of such language is dispositive because "[a]n estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same[.]" SDCL 43-25-1. We hold that Mary Lou did not become a tenant in common merely because she co-signed documents with Robert.

[¶29.]    Niesche finally argues that Mary Lou was a tenant in common because Robert verbally promised that half the land would go to Mary Lou's children when she died. Assuming that a verbal promise was made, Niesche's argument fails because the agreement was not in writing. Such agreements are not valid unless they meet the requirement of "a writing signed by the decedent evidencing [a] contract [to make a devise.]" *See* SDCL 29A-2-514. Accordingly, the circuit court did not err in ruling that Mary Lou had no ownership interest in the 960 acres.

[¶30.]    We conclude that the circuit court did not err in granting summary judgment on Niesche's individual causes of action and her claims for punitive damages and attorney's fees. We have not disregarded Niesche's allegation that Robert was domineering and controlling in the marriage. Robert's alleged conduct, if true, is not to be condoned. But the law of property controls this case. Each cause of action fails because Mary Lou had no claim to a right of ownership in the 960 acres and Niesche has no authority supporting her claims. Because all of Niesche's causes of action fail as a matter of law, there was no basis to award punitive damages or attorney's fees.

[¶31.]    Affirmed.

[¶32.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.