COMMERCIAL TRUST AND SAVINGS BANK as Administrator with Will Annexed of the Estate of Carrie Martin, Deceased, Plaintiff and Appellee,

v.

Russell V. CHRISTENSEN and Peter M. Christensen, Defendants and Appellants.

Nos. 18909, 18915.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1995.

Decided July 12, 1995.

Rehearing Denied August 16, 1995.

John L. Morgan of Morgan, Theeler, Cogley & Peterson, Mitchell, for plaintiff and appellee.

Wally Eklund of Johnson, Eklund, Nicholson, Dougherty & Abourezk, Gregory, for defendants and appellants.

MILLER, Chief Justice.

Appellants Russell V. Christensen and Peter M. Christensen (Christensens) appeal the trial court's grant of summary judgment to Appellee Commercial Trust & Savings Bank (Bank), the award of costs for expenses incurred by a potential witness, and the denial of restitution for improvements made to leased property. By notice of review, Bank claims Christensens were not entitled to restitution for payments of real estate taxes and purchase installments made on an invalid lease and option agreement. We affirm all issues except we reverse and remand the award of witness costs.

## FACTS

Carrie Martin (Martin) owned a 627–acre tract of land in Brule County, South Dakota. On September 24, 1979, she leased this property to her grandsons, Russell Christensen and Peter Christensen. The term of the lease spanned ten years, from March 1, 1980 through February 28, 1990. The lease included an option to purchase the property, which option could be exercised at any time prior to the termination of the lease. Under the terms of the lease and option agreement, lease payments would be credited toward the purchase price in the event Christensens exercised the option.

On July 3, 1987, Martin and Christensens entered into another contract entitled Addendum to Farm Lease (Addendum). The Addendum reiterated the original ten-year lease term, ending February 28, 1990. In addition, the Addendum gave Christensens the choice to extend the original lease and option beyond the February 28, 1990, termination date. The contract stated in relevant part:

> That prior to February 28, 1990 the tenants shall have the option of extending the lease for a period of twenty (20) years under the same terms and conditions. This lease shall automotically [sic] be renewed, unless tenants give written notice of their intention not to renew the lease.

. . . . .

> The Landlord shall pay any and all taxes and assessments upon the premises during the term of this lease and any renewal hereof or until the option to purchase is exercised as hereinafter set forth.

> The Landlord hereby gives to the Tenant an irrevocable option to purchase the real estate described herein, upon the following terms and conditions:

> a. The price for said real estate shall be One Hundred Twenty Six Thousand Four Hundred ($126,400.00) Dollars, and any amounts paid under the Ten (10) year lease and any renewal hereof set forth shall apply to the total purchase price for said real estate.

. . . . .

> c. This option may be exercised at anytime prior to March 1st, 2010.

. . . . .

> Both parties hereto understand and agree that this lease agreement and the option herein shall be binding upon the heirs, executors and assigns of all parties.

Martin died June 8, 1988. Her will gave the bulk of her estate to her children and grandchildren, including Christensens. Some of the beneficiaries questioned the validity of the Addendum. On August 3, 1990, Christensens indicated their intent to exer-

cise the option to purchase contained in the Addendum.

Ultimately, Bank was appointed as the administrator with will annexed of Martin's estate. On June 29, 1993, Bank commenced a quiet title action against Christensens, challenging the validity of the Addendum. Christensens later counterclaimed, seeking reimbursement for real estate taxes, improvement costs, and purchase payments on the land.

Granting Bank's summary judgment motion, the trial court ruled the lease agreement contained in the Addendum was invalid, because it violated the statutory prohibition on agricultural land leases in excess of twenty years. The trial court concluded the option to purchase the property was an integral part of the invalid lease agreement, and therefore was also void. The trial court awarded Christensens the amount of real estate taxes and installment payments made on the property from 1990 through 1993, minus the reasonable rental value of the land. The court denied Christensens any reimbursements for permanent improvements they made to the land.[1] Finally, the trial court awarded Bank certain costs associated with bringing the matter to trial.

## ISSUE I

DID THE AMENDED LEASE AGREEMENT OF JULY 3, 1987 VIOLATE SDCL 43–32–2 BY ALLOWING A LEASE PERIOD BEYOND TWENTY YEARS?

■ The trial court ruled the Addendum to Farm Lease, dated July 3, 1987, violated SDCL 43–32–2, which provides in pertinent part:

No lease or grant of agricultural land for a longer period than twenty years, in which shall be reserved any rent or service of any kind, shall be valid.

The Addendum reads in part:

The Landlord hereby leases to the Tenants to occupy and use for agricultural and related purposes the following described property located in Brule County, South Dakota, for the term of ten (10) years to

commence on March 1, 1980 and ending February 28, 1990:

[legal description omitted]

That prior to February 28, 1990 the tenants shall have the option of extending the lease for a period of twenty (20) years under the same terms and conditions. This lease shall automotically [sic] be renewed, unless tenants give written notice of their intention not to renew the lease.

The trial court concluded that the lease permitted Christensens to rent the property for an *additional* twenty years beyond the original ten-year lease period. Because the total extended lease term exceeded the twenty-year limit set forth in SDCL 43–32–2, the trial court ruled the lease was invalid.

Christensens argue the contract should be construed to effectuate valid contractual relations. They assert the language of the lease can properly be read to extend the lease for a *total* of twenty years, rather than for an additional twenty years. Christensens focus on the phrase "the tenants shall have the option of extending the lease for a period of twenty (20) years." They contend that the agreement simply allowed Christensens to add an additional ten-year term to the existing ten year lease. Under this interpretation, the extended lease period would expire on February 28, 2000.

■ Interpretation of contractual provisions is a question of law. *Butterfield v. Citibank of S. Dak.*, 437 N.W.2d 857, 858 (S.D.1989). Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination. *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D.1990).

■ Christensens properly argue that "a contract should be construed to effectuate valid contractual relations rather than in a manner which would render the agreement invalid[.]" *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312, 315 (S.D.1980) (citations omitted). However, in an effort to preserve the validity of a contract, this Court will not resort to strained or unusual interpretations. The Addendum gives Christensens the option of *ex-*

1. The trial court awarded Christensens a water tank they had installed on the property, so long

as it could be removed without damaging the water line.

*tending* the lease *for* a period of twenty years. The Addendum does not extend the lease *to* a period of twenty years, as Christensens suggest. Furthermore, the notion that the phrase operates only as an outer limit on the lease term does not survive careful consideration. For example, if the contract gave the option of "extending the lease for a period of ten (10) years," rather than twenty, the provision would be a nullity under Christensens' analysis; the lease already spanned ten years, so a ten-year extension could be given no effect under their view.

Other portions of the Addendum indicate that the extension was intended to add another twenty years to the ten-year lease term. " 'A contract should be considered as a whole and all of its parts and provisions will be examined to determine the meaning of any part.' " *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 151–52 (S.D. 1986) (quoting *Jones v. American Oil Co.,* 87 S.D. 384, 387, 209 N.W.2d 1, 3 (1973)). The contract gave Christensens an irrevocable option to purchase the real estate, and allowed any amounts paid under the ten-year lease and the subsequent extension to be applied to the purchase price. According to the contract, the option was open until March 1, 2010, thirty years after the initial lease date. If we interpret the lease extension as allowing an *additional* twenty-year lease period, the lease and the option would terminate simultaneously. This is a sensible outcome, since the contract allows the lease payments to be applied toward the purchase price. In contrast, if we accept Christensens' interpretation, the option would remain open ten years after the lease had expired. Christensens could exercise the purchase option on February 28, 2010, and insist that lease payments which ended ten years earlier be applied to the purchase price. We cannot conclude that the parties to the contract intended this bizarre result.

The trial court correctly held that, because the Addendum contract extends an agricul-tural lease beyond twenty years, in violation of SDCL 43–32–2, the lease is invalid.

## ISSUE II

WAS THE OPTION TO PURCHASE VOID BECAUSE IT WAS AN INTEGRAL PART OF THE INVALID LEASE AGREEMENT BETWEEN CHRISTENSENS AND CARRIE MARTIN?

 Even though the extended lease contained in the Addendum violated South Dakota law, Christensens argue the option to purchase is enforceable because it can be severed from the invalid portion of the contract. Christensens point to statutory authority for the divisibility of contracts:

> Where a contract has several distinct objects, one or more of which are lawful and one or more of which are unlawful in whole or in part, the contract is void as to the latter and valid as to the rest.

SDCL 53–5–4. *See also 1st American Systems, Inc. v. Rezatto,* 311 N.W.2d 51 (S.D. 1981) (stating "so long as an illegal covenant is divisible, the remaining legal covenants are enforceable") (citations omitted).

 The trial court determined that the option to purchase was void because it could not be severed from the invalid lease provision. Whether an agreement is severable rests on two preliminary requirements: (1) the parties' performances must be separable into corresponding pairs of part performances and (2) the parts of each pair must be regarded as agreed equivalents. E. Allen Farnsworth, *Contracts,* § 5.8 at 382 (2nd ed. 1990); Restatement (Second) of Contracts § 183 (1979).[2] Stated another way, a distinguishing mark of a divisible contract is that the consideration is not single, but can be apportioned to correspond with separate consideration offered by the other party. *City of Lansing v. Township of Lansing,* 356 Mich. 641, 97 N.W.2d 804, 813 (1959); *Anderson v. Kammeier,* 262 N.W.2d 366, 371 (Minn.1977) (citing 6 Williston, Contracts

---

2. Courts generally impose two additional limitations on divisibility if part of the agreement offends public policy: (1) the agreement must not be an integrated scheme to contravene public policy and (2) the party seeking enforcement must not have engaged in serious misconduct. *Farnsworth, supra,* § 5.8 at 383. Because we dispose of this case based on the absence of separable consideration, we do not address these additional requirements.

§ 860 (3rd ed. 1962)); *Gaspar v. Flott,* 209 Neb. 260, 307 N.W.2d 500, 503 (1981).

Here, the option and the lease are not supported by distinct consideration. Christensens note that the Addendum increased the purchase price on the land by $1,000. They argue that this $1,000 increase constitutes separate consideration for the option. We disagree. Christensens did not promise to pay the $1,000 in exchange for the option. Christensens only promised to pay the additional sum if they chose to *exercise* the option. As the trial court aptly noted, the only consideration tendered by Christensens was payment on the lease, which could also be applied toward the purchase price if they chose to exercise the option. The option itself was not supported by any additional consideration. Therefore, when the lease was declared unenforceable, there was no separate consideration to support the continuation of the option. The trial court properly ruled the contract was not divisible and the option was void.

## ISSUE III

WERE THE CHRISTENSENS ENTITLED TO REIMBURSEMENT FOR IMPROVEMENTS TO THE LEASED PROPERTY ON A THEORY OF RESTITUTION?

Christensens made improvements to the leased agricultural land, including installing a drainage ditch, removing rocks and trash, spraying pesticides, and repairing a well.

It is a well-settled principle that, in the absence of an agreement that the landlord will pay for improvements or a statute imposing liability on the landlord, a tenant is not entitled to compensation for improvements made to the leasehold even though they cannot be removed by the lessee. *Greeman v. Smith,* 138 N.W.2d 433, 438 (N.D.1965) (citing *Brown v. Ward,* 221 N.C. 344, 20 S.E.2d 324, 326 (1942)); 49 Am.Jur.2d *Landlord and Tenant* § 902 (1995). Here, the lease agreement and Addendum do not address improvements to the land and there is no statute imposing liability on the landlord. Indeed, unless a tenant can remove his property without causing injury to the landlord's premises, SDCL 43–33–2 gives a land-

lord ownership rights in property affixed to his land by the tenant. SDCL 43–33–2 states:

> Except as provided by § 43–33–3, when a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land unless he chooses to require the former to remove it.

Nevertheless, Christensens claim they should receive restitution for the value of the improvements, because Martin's estate was unjustly enriched thereby. Unjust enrichment claims do not arise simply because the landlord benefits from the efforts of tenants; "unjust" enrichment implies illegal or inequitable behavior by the landlord in obtaining the benefits conferred by the tenant. *In re Estate of Vangen,* 370 N.W.2d 479, 480 (Minn.Ct.App.1985). For example, in *Whitson v. Lende,* 442 N.W.2d 267 (S.D.1989), we awarded restitution for renovation expenses incurred by tenants of a gas station and car wash. Importantly, when the parties negotiated the terms of the lease, the landlord orally agreed to complete many of the improvements ultimately performed by the tenants and to provide an allowance to the tenants for further improvements to the property. *Id.* at 268.

As in *Whitson,* other jurisdictions typically require some showing that the landlord requested the improvements or agreed to reimburse the tenants for their expenses. *Hertz v. Fiscus,* 98 Idaho 456, 457, 567 P.2d 1, 2 (1977) (where landlords approved tenant's renovation of their property and failed to object to the work, tenants were entitled to recovery on theory of unjust enrichment); *Gourley v. O'Donnell,* 51 Or.App. 477, 626 P.2d 367, 371 (1981) (where tenant made improvements to land in contemplation of purchasing the property, rather than at request of landlord, tenant had no right to restitution); *Lafary v. Lafary,* 522 N.E.2d 916, 918 (Ind.Ct.App.1988) (landlord was not unjustly enriched where tenant made improvements on his own behalf, rather than on behalf of the landlord). In this case, Christensens do not assert that Martin or her beneficiaries requested they make these improvements to the property or otherwise sug-

gested they would reimburse Christensens for these expenses. In the absence of any such inequitable actions by the landlord, the trial court properly denied restitution.

## ISSUE IV

### WERE CHRISTENSENS ENTITLED TO REIMBURSEMENT OR OFFSET FOR REAL ESTATE TAXES PAID AND INSTALLMENT PAYMENTS MADE UNDER A VOID LEASE AGREEMENT?

■ Mistakenly believing the lease and option in the Addendum were valid, Christensens paid real estate taxes on the land and made installment payments to the estate of Carrie Martin from 1990 through 1993. The trial court ruled Christensens were entitled to reimbursement for these payments to the extent they exceeded the fair market rental value of the property. The trial court entered a judgment against Bank, as administrator of Martin's estate, for these sums.

By notice of review, Bank contends Christensens are not entitled to restitution of money paid under a void lease and option agreement. As Bank suggests, "[c]ourts generally do not grant restitution under agreements that are unenforceable on grounds of public policy." *Farnsworth, supra,* § 5.9 at 386. However, many courts recognize an exception to this general rule when a party would "suffer a forfeiture that is disproportionate to the contravention of public policy involved." *Id. See also* Restatement (Second) of Contracts § 197 cmt. b (1981).

■ The exception is often used in favor of a party who is excusably ignorant of technical rules or regulations, where strict application of these rules or regulations would result in forfeiture if restitution were not allowed. *Id.* We have previously recognized this exception:

> If a contract is deemed void for noncompliance with a statute, it is a nullity conferring no right and creating no obligation as between the parties. A party thereto must then recover, if at all, upon an implied agreement on the part of the party receiving benefits to pay what the same were reasonably worth.

*Thurston v. Cedric Sanders Co.,* 80 S.D. 426, 429, 125 N.W.2d 496, 498 (1963). Contracts implied in law rest on the equitable principle that courts will not allow a person to unjustly enrich himself at the expense of another. *Id.* "Enrichment can be unjust if it is a result of money paid by mistake." *A.G. Edwards & Sons Inc. v. Northwest Realty Co.,* 340 N.W.2d 187, 189 (S.D.1983) (citing 66 Am. Jur.2d *Restitution and Implied Contracts* §§ 3, 8, 118 (1973)). Here, when Christensens executed the Addendum agreement, they were excusably ignorant of the technical requirement that agricultural land leases not exceed twenty years. They later paid the taxes and installment amounts under the mistaken belief that the lease and option contained in the Addendum would be upheld in court. It would be inequitable to allow the estate of Martin to profit from Christensens' erroneous belief in the legality of the contract. The trial court properly allowed restitution for taxes and installment payments.

## ISSUE V

### DID THE TRIAL COURT ABUSE ITS DISCRETION BY TAXING AS COSTS WITNESS FEES AND MILEAGE FOR AN INDIVIDUAL WHO ATTENDED THE TRIAL BUT DID NOT TESTIFY?

■ The trial court permitted Bank to recover certain costs incurred in gathering evidence and bringing the matter to trial, including mileage ($126) and witness fees ($20) connected with the attendance of Homer Martin at the trial.

Homer Martin was a beneficiary under Carrie Martin's will. While he attended part of the trial, he was not subpoenaed and did not testify. In justifying the award of fees before the trial court, Bank asserted that Homer Martin was a proposed witness and attended the trial at the request of Bank's counsel.

Christensens argue the trial court abused its discretion in awarding witness fees and mileage expenses for an individual who never testified. We have written:

> Costs are not recoverable except by statute. A party to litigation incurs many expenses but only those specifically authorized by statute may be taxed as costs. The trial court has some discretion in tax-

ing costs, but the court must use cautious restraint within the guidelines set by statute.

*Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900, 906 (S.D.1994) (citations omitted).

SDCL 15–17–37 permits a prevailing party in a civil action to recover "fees of witnesses" and "other similar expenses and charges." Bank contends Homer Martin's per diem and mileage expenses fall within these provisions. We disagree.

In *Kallis v. Beers,* 375 N.W.2d 642 (S.D. 1985) we disallowed witness and mileage fees for an individual who was a party to the action.[3] Other courts have also held that a successful party is not entitled to per diem and mileage expenses for appearing as a witness in his own case. *Swallows v. Laney,* 102 N.M. 81, 86, 691 P.2d 874, 879 (1984); *City of Charlotte v. McNeely,* 281 N.C. 684, 190 S.E.2d 179, 186 (1972); *A.J. Tenwood Associates v. Orange Senior Citizens Housing Co.,* 200 N.J.Super. 515, 491 A.2d 1280, 1288 (App.Div.1985), *cert. denied* 101 N.J. 325, 501 A.2d 976 (1985); *Owens v. Town of Huntington,* 125 Misc.2d 574, 479 N.Y.S.2d 642, 645–46 (N.Y.Co.Ct.1984). As one New York court observed:

> The legislature never intended, I think, in allowing parties to be witnesses for themselves, to put them on a par with other witnesses in respect to witness fees, when they attend the trial to give evidence in their own favor. This would open a door to much abuse, which I should be unwilling to sanction till the legislature so commands.

*Hinton v. Scharoun Industries, Inc.,* 41 N.Y.S.2d 595, 596 (N.Y.Sup.Ct.1943).

As noted above, Homer Martin was a beneficiary under the will. Because the quiet title action would decide whether Martin's estate retained the land in issue, he had a strong personal interest in the outcome of the litigation. Indeed, during the trial, his attorney was seated at the counsel table with Bank's counsel. For purposes of awarding witness and mileage fees, Martin was akin to a party in the action. Consequently, we hold

the trial court abused its discretion in awarding mileage and witness fees associated with his attendance at trial. We remand for an adjustment of taxable costs.

Affirmed in part, reversed in part, and remanded.

SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

3. *Kallis* was decided under SDCL 15–17–4, the predecessor to our current taxable costs statute, SDCL 15–17–37. Both statutes simply allow a party to recover fees for witnesses. SDCL 15–7–

4 (*repealed* 1992 S.D.Sess.L. ch. 148, § 26); SDCL 15–17–37. The new statute does not require a different rule than we fashioned in *Kallis.*