#28365-aff in pt & rev in pt-JMK
**2018 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JUNE J. HUSTON,                                                      Plaintiff and Appellant,

     v.

VANCE MARTIN and THE
ESTATE OF DALE M. JARMAN,                          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HAAKON COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge
\* \* \* \*

ROGER A. TELLINGHUISEN
MICHAEL V. WHEELER of
DeMersseman, Jensen, Tellinghuisen
  & Huffman, LLP
Rapid City, South Dakota                              Attorneys for plaintiff and
                                                          appellant.

WILLIAM M. VAN CAMP of
Olinger, Lovald, McCahren,
  Van Camp & Konrad, PC
Pierre, South Dakota                                    Attorneys for defendants and
                                                          appellee Vance Martin.

MARGO D. NORTHRUP of
Riter, Rogers, Wattier
  & Northrup, LLP
Pierre, South Dakota                                    Attorneys for defendant and
                                                          appellee the Estate of Dale M.
                                                          Jarman.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2018
OPINION FILED **10/10/18**

#28365

KERN, Justice

[¶1.] At Father's insistence, Daughter conveyed considerable amounts of land to her father and nephew. In return, Father promised to "make things right" with Daughter by leaving her half of his estate. However, Father left Daughter only $30,000 in his will after conveying the vast majority of his multi-million-dollar estate to Daughter's nephew. Daughter sued her nephew and the estate, alleging breach of contract, fraud, and unjust enrichment. Nephew and the estate moved for summary judgment on several grounds, including that Daughter's claims were untimely under SDCL 29A-3-803 and prohibited because a contract to devise by will must be in writing. The circuit court dismissed the case, granting the motion for summary judgment. We affirm in part and reverse in part.

**Facts and Procedural History**

[¶2.] Prior to his death, Dale Jarman (Jarman) owned and operated a large cattle ranch in Haakon County. Jarman operated the property via Jarman Ranch, LLC, which possessed significant assets. Jarman and his wife (Joyce) had two daughters, June Huston (Huston) and Susan Martin (Susan), and a grandson, Vance Martin (Martin). In 2002, Susan transferred 640 acres of property to Huston via a series of deeds made without consideration due to concerns about the health of Susan's husband. The family worried that Susan's retention of the property would affect Medicaid payments or could be targeted by creditors. When Joyce died in July 2010 Huston inherited an undivided one-half interest in the family ranch.

[¶3.] On March 31, 2011, Huston, at Jarman's insistence, executed and delivered a warranty deed transferring her undivided one-half interest in 147.77

-1-

acres of land to Jarman for and in consideration of one dollar. Huston claims she did not wish to transfer the land. When deposed, Susan substantiated Huston's claim, observing that Jarman was "persistent" in his efforts to convince Huston to transfer the property. On March 13, 2013, Huston also transferred by quitclaim deed her ownership interest in 560 acres of real estate to Martin. Huston averred that Jarman threatened to disinherit her if she did not comply and promised to "make things right" with her in his will if she made the transfers. Specifically, Huston alleged that Jarman promised to leave her 50% of his estate.

[¶4.]     However, Jarman favored Martin in his estate planning. In May 2011, shortly after Jarman received Huston's land, Jarman requested that his attorney revise his will to devise nearly the entirety of his estate to Martin. Unbeknownst to Huston, by the end of 2012, Jarman had transferred more than $2,500,000 in cash and assets to Martin. Martin did not give consideration for the gratuitous transfers. After his death in March 2014, Jarman's will revealed that he had devised almost all his property to Martin, including the land Huston had conveyed to him. Although the property was worth millions of dollars, Jarman left only $30,000 to Huston in his will.

[¶5.]     On July 24, 2014, Jarman's estate published a notice to creditors. On July 8, 2015—nearly a year later—Huston filed a complaint against Martin and the estate, alleging fraud, breach of contract, promissory estoppel, and unjust enrichment. On June 9, 2017, Martin and the estate moved for summary judgment, raising numerous grounds for dismissal. The circuit court held a hearing to consider the motion on August 18, 2017. Martin and the estate argued that SDCL

29A-3-803 barred Huston's claims for breach of contract and fraud because Huston failed to file her claim within four months from the date notice was given to creditors pursuant to SDCL 29A-3-801(a).[1] They also argued that Huston's contract claim could not survive without written evidence memorializing the alleged contract under the statute of frauds or SDCL 29A-2-514, which require that any contract to make a will or devise be in writing.

[¶6.] While acknowledging that this Court has enforced oral agreements in the past, Martin and the estate contended that those cases predated the enactment of SDCL 29A-2-514. According to Martin and the estate, because SDCL 29A-2-514 bars the claim irrespective of any partial performance, our precedent enforcing oral agreements is irrelevant in the present case. Further, they contended that Huston's fraud claim could not survive apart from the contract claim because the fraud allegation did not arise from a breach of an independent legal duty, i.e., that "all of their assertions . . . are formed or arise from the formation and enforceability of the contract." Finally, Martin and the estate asserted that Martin was not unjustly enriched by retaining the land because he was unaware of any contract between Jarman and Huston and engaged in no wrongdoing.

---

1. SDCL 29A-3-801(a) provides:

> A personal representative upon appointment may publish a notice to creditors once a week for three successive weeks in a legal newspaper in the county in which the proceeding is pending giving the personal representative's name and address and notifying creditors of the decedent to present their claims within four months after the date of the first publication of the notice or the claim may be barred.

[¶7.] In response, Huston argued her claims were not time barred by SDCL 29A-3-803 because, in her view, the four month limitations period did not apply to her claims. Specifically, she contended that SDCL 29A-3-803 applied only to claims that arose *prior* to the decedent's death—her claims, she emphasized, only became actionable *after* Jarman's death when she realized her father bequeathed assets to Martin in violation of their contract. Further, Huston argued that when she transferred the property to Jarman, she triggered the partial-performance exception to the statute of frauds. Jarman argued that the exception must equally apply to SDCL 29A-2-514 because claiming a contrary conclusion would lead to an unjust result. As to the fraud claim, Huston observed that fraud involves questions of fact and summary judgment at this stage would be premature. Regarding unjust enrichment, Huston noted Martin had both received a benefit and knew of the benefit, and, as such, it would be inequitable for Martin to keep the land without paying consideration.

[¶8.] After hearing argument from the parties, the court remarked that the case involved "a great number of . . . potential inequities[.]" However, the court concluded that "under the circumstances . . . and the statutory language," it would "grant summary judgment on all claims," observing that "obviously, this is something the Supreme Court is going to have to sort out as to, certainly, the breach of contract and matters." The court did not elaborate further as to what statutory language it was referencing, nor did it provide citations to authority in its order granting Martin and the estate's motion for summary judgment.

[¶9.]     Huston argues that the circuit court erred in granting summary judgment. To answer this question, we restate Huston's issues as follows:

1.    Whether the circuit court erred by dismissing Huston's breach-of-contract claim.

2.    Whether the circuit court erred by dismissing Huston's fraud claim.

3.    Whether the circuit court erred by dismissing Huston's unjust-enrichment claim.

## Standard of Review

[¶10.]     Under our well-settled standard of review, "[s]ummary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hofer v. Redstone Feeders, LLC*, 2015 S.D. 75, ¶ 10, 870 N.W.2d 659, 661 (citing SDCL 15-6-56(c)). The moving party bears "the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law[,]" and we view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Id.* ¶ 10, 870 N.W.2d at 661–62. "The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804. Even if the circuit court grants summary judgment without offering the basis for its decision, "[i]f there exists any basis which supports the ruling of the [circuit] court, affirmance of a summary judgment is proper." *Id.* ¶¶ 11, 19, 763 N.W.2d at 804, 806. We review the circuit court's legal conclusions, including statutory interpretation, de novo. *Hofer*, ¶ 11, 870 N.W.2d at 662.

## Analysis

1.    ***Huston's breach-of-contract claim.***

[¶11.]    Huston argues that the circuit court erred by granting summary judgment on her breach of contract claim.  Specifically, she alleges that viewed in the light most favorable to her claim, the evidence established a contract between Jarman and Huston, and that the contract, though oral, overcame the statute of frauds defense.  Although Huston recognizes that SDCL 29A-2-514 requires some form of writing pertaining to the alleged contract, Huston notes that under the statute of frauds, partial performance obviates the need for a written contract.  Huston claims that "to the extent the statute of frauds defense even applies in this instance, whether found at SDCL 29A-2-514 or elsewhere, it is clearly defeated based upon the fact that" Huston performed under the contract.  Huston cites *Hahne v. Burr*, 2005 S.D. 108, 705 N.W.2d 867 in support of her argument that an oral promise to convey real property may be enforced where partial performance has occurred.[2]

[¶12.]    SDCL 53-8-2, South Dakota's statute of frauds, provides that a court may "compel specific performance of any agreement for sale of real estate *in case of part performance thereof*[.]"  (Emphasis added.)  However, SDCL 29A-2-514 states that

> [a] contract to make a will or devise . . . may be established *only* by (i) the provisions of a will stating material provisions of the contract, (ii) an express reference in a will to a contract and

---

2.    The other cases cited by Huston predate SDCL 29A-2-514 and therefore do not control our analysis.

> extrinsic evidence proving the terms of the contract, or (iii) a writing signed by the decedent evidencing the contract.

(Emphasis added). The Legislature patterned the language of SDCL 29A-2-514 after provisions contained in the Uniform Probate Code (UPC), specifically § 2-514 of the UPC, which "tighten[s] the methods by which contracts concerning succession may be proved." Unif. Prob. Code § 2-514 cmt. (Unif. Law Comm'n 2010).

[¶13.] Here, no such writings exist, and the statute contains no partial-performance exception. Indeed, the statute limits the means by which a contract to convey by will can be established to "only" those listed. SDCL 29A-2-514. We have held that even if a verbal promise was made, an agreement will fail if "not in writing" as required by statute. *Niesche v. Wilkinson*, 2013 S.D. 90, ¶ 29, 841 N.W.2d 250, 258 (citing SDCL 29A-2-514).[3]

[¶14.] Additionally, other states that have examined identical statutes adopting language from the UPC have concluded that, absent a writing, a contract to will or devise does not exist. *See, e.g.*, *Cragle v. Gray*, 206 P.3d 446, 452 (Alaska 2009); *Orlando v. Prewett*, 705 P.2d 593, 596–98 (Mont. 1985) ("To recognize a part

---

3. Although Huston notes that in *Niesche*, no "allegations of fraud" were made and "SDCL 29A-2-514 by its terms does not apply to fraud claims," Huston does not elaborate how distinguishing the case in this way affects the analysis of whether there must be a writing to support her breach-of-contract claim.

   Additionally, Huston claims that "[t]he facts supporting [a] claim of [promissory] estoppel exist in the record, have been pled, and constitute yet another ground for denying summary judgment." But although we have said that "the doctrine of equitable estoppel may prevent a party to an oral agreement from invoking the Statute of Frauds[,]" *Farmers Elevator Co. of Elk Point v. Lyle*, 90 S.D. 86, 238 N.W.2d 290, 293 (1976), Huston cites no authority supporting such an exception under SDCL 29A-2-514.

performance exception to this statute would once again create the uncertainties and litigation that the statute was designed to reduce and eliminate."); *Johnson v. Anderson*, 771 N.W.2d 565, 569–70 (Neb. 2009). Because Huston has not alleged a valid breach-of-contract claim, we need not address whether the claim was time barred under SDCL 29A-3-803. The circuit court did not err by granting summary judgment on the contract claim.

### 2. *Huston's fraud claim.*

[¶15.] Huston claims that the circuit court erred in granting summary judgment on her claims of fraud.[4] She argues that her claim should survive regardless of the validity of her contract with Jarman because fraud may be based in tort as well as in contract. In Huston's view, she established the basic elements of fraud by presenting evidence of a letter from Jarman to his attorney directing the attorney to redraft his will to make Martin his primary beneficiary. She also contends that she identified evidence suggesting Jarman carried out his intent to gift Martin a vast majority of his estate in violation of their agreement. Accordingly, Huston argues that the circuit court prematurely granted summary judgment.

[¶16.] The circuit court did not specify its reason for granting Martin and the estate's motion for summary judgment on Huston's fraud claim. Huston argues her claim was both validly pled and timely because the statute of limitations in SDCL

---

4. Huston's complaint alleges that "Martin was knowledgeable and had actual knowledge of [Jarman's] representations." However, Huston has failed to identify any facts in the record to support a fraud claim against Martin. To the extent Huston's fraud claim included Martin, the circuit court properly granted summary judgment.

29A-3-803 did not apply to it.  In response, Martin and the estate argue that, pursuant to SDCL 29A-3-803, the circuit court properly dismissed Huston's fraud claim against the estate.  SDCL 29A-3-803 bars "[a]ll claims against a decedent's estate *which arose before the death of the decedent . . . .*" unless, in the case of creditors notified by publication, their claim is presented to the estate "within the time set in the published notice to creditors[.]"  (Emphasis added).  Considering this, Martin and the estate assert that Huston's fraud claim is untimely because Huston did not pursue the claim within four months after publication of the notice to creditors.  *See* SDCL 29A-3-801(a).

[¶17.]        In support of this proposition, Martin and the estate cite *Spohr v. Berryman*, 589 So. 2d 225 (Fla. 1991), a Florida Supreme Court decision.  *Spohr* involved a divorce agreement directing the husband, Spohr, to prepare and maintain in his possession a will that "would bequeath and devise to his wife and children not less than one half of his estate."  *Id.* at 226.  Despite this agreement, Spohr left his entire estate to his surviving spouse.  *Id.*  Spohr's ex-wife and children failed to bring a claim against the estate within the time permitted under Florida's nonclaim statute.  *Id.* at 226–27.

[¶18.]        The Florida Supreme Court concluded that although "the claim of [the ex-wife] and the children did not come to fruition until the contents of Mr. Spohr's will were ascertained following his death, the claim itself, . . ." arose out of an agreement entered into many years prior.  *Id.* at 227.  The court labeled the claim as contingent, reasoning that "liability depend[ed] on some future event, which may or may not happen, [and] render[ed] it uncertain whether there ever will be a

liability." *Id.* Because Florida's nonclaim statute—like South Dakota's—contemplated contingent claims, the court held that the claims were untimely. *Id.* The court also expressed concern about claims being brought years after the decedent's passing, which could "substantially delay[] or disrupt[]" distributions to beneficiaries. *Id.* at 227.

[¶19.] South Dakota's nonclaim statute applies to *all* claims "which arose before the death of the decedent." SDCL 29A-3-803(a). These include claims "whether due or to become due, absolute or contingent, liquidated or unliquidated, founded in contract, tort, or other legal basis, if not barred earlier by another statute of limitations or nonclaim statute[.]" *Id.* "Words and phrases in a statute must be given their plain meaning and effect." *Reints v. Pennington Cty.*, 2015 S.D. 74, ¶ 11, 869 N.W.2d 466, 469. In determining whether SDCL 29A-3-803 applies to a claim, we have analyzed whether the claim arose prior to the decedent's passing. *See In re Estate of Ginsbach*, 2008 S.D. 91, ¶ 14, 757 N.W.2d 65, 69 (observing that plaintiff knew, among other things, that decedent "had no intention to transfer" ownership of property to plaintiff while decedent was alive).

[¶20.] If a *contingent* claim for fraud arose before Jarman's passing, then the claim would be untimely under SDCL 29A-3-803. A *contingent claim* is one "that has not yet accrued and is dependent on some future event that may never happen." *Claim*, *Black's Law Dictionary* (10th ed. 2014). "The distinguishing feature of a contingent claim is that the cause of action has not accrued." *Turner v. Meek*, 284 S.W.2d 848, 850 (Ark. 1955); *see also In re Weinberger's Estate*, 279 N.W.2d 849,

853 (Neb. 1979) ("Until that future event happens a right of action upon the contingent claim does not arise.").

[¶21.] For example, in *Le Sueur v. Quillian*, 56 S.D. 289, 228 N.W. 380 (1929), we held that a claim was contingent and therefore barred as untimely when the claim depended on the potential actions of one of the parties. The dispute in *Quillian* arose after Quillian conveyed land by warranty deed to Le Sueur in 1921. *Id.* Quillian had previously mortgaged the land, and in 1923, Quillian died. *Id.* Le Sueur did not present a claim within the time given by the notice to creditors. *Id.* at 381. In 1925, the "mortgage, not being paid, was foreclosed," and Le Sueur was evicted under a sheriff's deed. *Id.* at 380. In 1926, Le Sueur presented a claim for the amount of consideration recited in her deed with Quillian plus interest from the date of eviction. *Id.* at 381.

[¶22.] The *Quillian* Court observed that the "covenant against [e]ncumbrances was broken as soon as the warranty deed to [Le Sueur] was delivered. Therefore, at the time of Quillian's death and during the period within which creditors might present claims was running, [Le Sueur] had a claim which could have been presented to the executrix." *Id.* The Court further noted that "the claim was contingent" because "if Quillian's executrix or heirs . . . pa[id] off the [e]ncumbrance, no claim in favor of [Le Sueur] would thereafter exist[.]" *Id.* Because "[Le Sueur's] claim for the amount of the consideration named in her deed could have been presented as a contingent claim," the claim was barred under the nonclaim statute. *Id.* at 382.

[¶23.]     In the instant case, Huston possessed a contingent claim against Jarman. The facts, taken in the light most favorable to Huston, show Jarman misrepresented his intentions for his estate plan, causing Huston to rely on those false statements when she transferred her land to Jarman. Thus, the basis for the claim arose out of an agreement made during Jarman's lifetime. However, the claim was contingent because Jarman could have modified his will to "make things right" at any time while he was still alive. Thus, Huston's claim had "not yet accrued" and was "dependent on some future event that may never happen," *Claim*, *Black's Law Dictionary* (10th ed. 2014), namely, Jarman fulfilling his promise. As such, SDCL 29A-3-803 bars the fraud claim because it first arose as a contingent claim during Jarman's lifetime and was not timely filed within four months after notice of publication to creditors. Unlike some other courts that have recognized an exception to nonclaim statutes "where the claim is a contingent one[,]" *see, e.g.*, *Moore v. Stephens*, 84 So. 2d 752, 754 (Ala. 1956), South Dakota's nonclaim statute expressly includes contingent claims.

[¶24.]     To support her position that SDCL 29A-3-803 does not apply to her fraud claim, Huston relies primarily on *In re Estate of Green*, 516 N.W.2d 326, 329 (S.D. 1994), which analyzed South Dakota's prior nonclaim statute, SDCL 30-21-17. In *Green*, Husband and Wife executed a joint will in 1964 providing that after their death, their estate would be divided equally between their nieces and nephews. *Id.* at 327. After Husband's death, Wife executed a new will leaving her estate to her siblings and their children instead. *Id.* After Wife's death, Husband's nieces and nephews successfully challenged Wife's new will. *Id.* at 328. The trial court

imposed a constructive trust for the benefit of Husband's nieces and nephews. *Id.*
It determined the 1964 joint and reciprocal will created a contract between
Husband and Wife that the property pass consistent with the 1964 will upon the
death of the second spouse. *Id.* When the Wife's heirs appealed the decision
imposing the constructive trust the court dismissed it as untimely. *Id.* Wife's heirs
subsequently objected to the petition proposing to distribute the property consistent
with the constructive trust ruling. Wife's heirs claimed the contract claim
supporting the constructive trust ruling was time barred under SDCL 30-21-17
because Husband's heirs had failed to timely assert the contract claim in the
probate following Husband's death. *Id.* at 330. The probate court denied the
objection and ordered the property to be distributed consistent with the court
imposed constructive trust. The *Green* Court affirmed. *Id.* at 331.

[¶25.] The *Green* Court, focusing on the date on which the claim accrued,
rejected the argument that the time restraints in SDCL 30-21-17 were applicable to
the breach-of-contract claim. It held "South Dakota case law on claims arising
under this statute is clear—the statute is limited in application to "claims" which
are collectible from the decedent during his or her lifetime." *Id.* at 329. Thus, the
Court concluded that a claim for breach of contract to devise property sounded in
contract rather than probate, so the nonclaim limitations period for creditor claims
against an estate did not apply. *Id.*

[¶26.] We conclude that Huston's reliance on *Green* and the repealed
language of SDCL 30-21-17 is inapposite. While the *Green* Court correctly rejected
the attempt to use SDCL 30-21-17 to collaterally attack the trial court's final

decision imposing a constructive trust, *Green*'s reading of SDCL 30-21-17 was incomplete. Specifically, the *Green* Court, when holding the breach of contract to devise property was not a creditor's claim under SDCL 30-21-17, did not consider the meaning of a "contingent claim." Rather, its analysis focused on when the Green's contract claim "accrued." *Id.* at 328–29. But, as our opinion today emphasizes, a contingent claim may be different than a claim that has accrued—a contingent claim is dependent on a potential future event and an accrued claim is one that has already come into existence as an enforceable claim. Thus, the *Green* Court incorrectly focused on when the claim could be "filed." Discussing only "accrual" and "filing" overlooked the statutory "contingent claim" language that we must interpret today.[5] *See id.* Therefore, we conclude Green's analysis of the prior non-claim statute in SDCL 30-21-17 is not controlling of our reading of the current non-claim statute in SDCL 29A-3-803(a).

[¶27.] Moreover, our holding today that Huston's contingent claim for fraud is governed by the provisions of SDCL 29A-3-803 is aligned with the majority of jurisdictions that have adopted statutes identical to SDCL 29A-3-803(a). *See*

---

5. The *Green* court reasoned:

> An action for breach of a contract to convey by will does not *accrue* until the death of the promisor. *Kitchen,* 498 N.E.2d at 45; *Stratmann,* 806 P.2d at 464 (finding the contract is breached when prior will is revoked). Greens could not have filed a creditor's claim against Carrol Green because the breach of which they complain (her failure to honor the contract contained in the 1964 joint will) did not *occur* until her death. Therefore, their claim could only be *filed* against her estate and does not fall within the ambit of SDCL 30-21-17. 516 N.W.2d at 330. (Emphasis added.)

*generally, e.g.*, *Spohr*, 589 So. 2d at 228 (applying a nearly identical nonclaim statute to an ex-wife and her children's claims that the husband failed to provide for their maintenance in his will); *Underwood v. Underwood*, 999 S.W.2d 716 (Ky. Ct. App. 1999) (holding a wife's claim for pension benefits was subject to a nonclaim statute identical to South Dakota's provision); *Phillip v. Quick*, 731 S.E.2d 327 (S.C. Ct. App. 2012) (holding that a daughter's allegation that her father took funds belonging to her pursuant to the Uniform Gift to Minors Act without notifying her was barred by the nonclaim statute); *In re Estate of Ostler*, 2009 UT 82, 227 P.3d 242 (holding that a mother's wrongful death action against an estate for the death of her husband must be brought within the nonclaim period).

[¶28.] Further, because the claim became actionable after Jarman's death, we need not address those situations where the contingent event does not or cannot occur until after the close of the claims-filing period. *See generally Johnson v. Larson*, 216 N.W. 895 (N.D. 1927). Here, a contingent claim for fraud arose prior to Jarman's death. Huston did not timely file her claim within the applicable four-month time frame, and the claim is barred by SDCL 29A-3-803. The circuit court did not err by granting summary judgment on this claim.

### 3. *Huston's unjust-enrichment claim.*

[¶29.] Huston also argues that the circuit court improperly granted summary judgment on her unjust enrichment claim.[6] She alleges that when reviewing the

---

6. Huston's complaint for unjust enrichment appears to allege claims of unjust enrichment against the estate. To the extent the unjust-enrichment claim is alleged against the estate, the claim suffers from the same timeliness infirmity under SDCL 29A-3-803 discussed in Issue 2 above and summary

(continued . . .)

evidence in the light most favorable to her claim, she has established that Martin received a benefit and knew he received that benefit. She asserts that whether Martin had actual knowledge of Jarman's promise involves a question of fact. Finally, she argues that allowing Martin to retain the benefit without paying for it would be inequitable. In response, Martin and the estate argue that Huston failed to identify facts establishing the necessary elements of unjust enrichment because, according to them, absent some "inequitable behavior on [Martin's] behalf," no unjust-enrichment claim can lie.

[¶30.]　　　An unjust-enrichment action sounds in equity. *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 14, 658 N.W.2d 783, 788. "Unjust enrichment contemplates an involuntary or nonconsensual transfer, unjustly enriching one party. The equitable remedy of restitution is imposed because the transfer lacks an adequate legal basis." *Johnson v. Larson*, 2010 S.D. 20, ¶ 8, 779 N.W.2d 412, 416. A party alleging unjust enrichment must show that the other party both received and knew he was receiving a benefit. Additionally, it must be inequitable to allow the enriched party to retain the benefit without paying for it. *Id.* ¶ 11, 779 N.W.2d at 416–17.

[¶31.]　　　Even assuming Martin did not engage in any wrongdoing, the actual question is whether "it would be inequitable to allow [him] to retain the benefit without paying for it." *Larson*, 2010 S.D. 20, ¶ 11, 779 N.W.2d at 416; *see also DFA Dairy Fin. Servs., L.P. v. Lawson Special Tr.*, 2010 S.D. 34, ¶ 28, 781 N.W.2d 664, 671 ("Unjust enrichment occurs 'when a party confers a benefit upon another party

---

(. . . continued)
　　　judgment was properly granted on any unjust-enrichment claim against the estate.

-16-

who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying.'").

[¶32.]    Despite this, Martin cites *Commercial Trust and Savings Bank v. Christensen*, 535 N.W.2d 853, 858 (S.D. 1995), where we said that an unjust-enrichment claim does not arise simply because a landlord benefits from a tenant's efforts to permanently improve the property. We held that an unjust-enrichment claim in this context "implies illegal or inequitable behavior by the landlord in obtaining the benefits conferred by the tenant," such as by "request[ing] they make . . . improvements to the property or otherwise suggest[ing] they would reimburse" the tenant for the cost incurred in doing so. *Id.* at 858–59. However, *Christensen* is distinguishable from the present circumstances because Huston's situation does not involve a disagreement between a landlord and tenant. As articulated by *Christensen*, landlord–tenant disputes involve the "well-settled principle that, in the absence of an agreement that the landlord will pay for improvements or a statute imposing liability on the landlord, a tenant is not entitled to compensation for improvements made to the leasehold even though they cannot be removed by the lessee." *Id.* at 858.

[¶33.]    Although a court may, after weighing the equities in a particular case, grant or deny a remedy, *Hofeldt,* 2003 S.D. 25, ¶ 14, 658 N.W.2d at 788, here the court dismissed the claim on summary judgment without providing a reason. Doing so at this stage of the proceedings was premature because genuine issues of material fact exist as to what Martin knew and did with respect to Huston and

Jarman's alleged agreement. The circuit court erred by granting summary judgment on this claim against Martin.

## Conclusion

[¶34.] Huston's breach-of-contract claim fails under SDCL 29A-2-514 because it is not evidenced in writing. SDCL 29A-3-803 bars Huston's fraud claim because it arose as a contingent claim during Jarman's lifetime and was filed more than four months after notice of publication to creditors. The court's order granting summary judgment on these two claims is affirmed. However, because Huston may have an unjust-enrichment claim against Martin, we reverse the court's grant of summary judgment on this issue.

[¶35.] Affirmed in part and reversed in part.

[¶36.] GILBERTSON, Chief Justice, and ZINTER and JENSEN, Justices, and SEVERSON, Retired Justice, concur.

[¶37.] SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.